No. 76,131

STATE OF KANSAS, *Appellee*, v. KEVIN C. BORMAN, *Appellant*.
(956 P.2d 1325)

Opinion filed April 17, 1998.

*Ezra J. Ginzburg,* assistant appellate defender, argued the cause, and *Alice C. Craig,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were on the brief for appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Kevin C. Borman, from his conviction for intentional second-degree murder. Borman was charged with first-degree premeditated murder, and the jury found him guilty of intentional second-degree murder.

Borman appeals, contending the instruction given on diminished capacity was erroneous because (1) it applied diminished capacity to Borman's intent to premeditate and not his intent to kill and (2) the instruction included language which was not warranted by the facts of the case.

On July 10, 1995, the body of Ina Villarreal was found in a wheat field in Sedgwick County. The partially decomposed body had signs of trauma to the head and stab wounds to the neck and upper chest, as well as defensive wounds.

Borman eventually told law enforcement officers he had gotten into a fight with Villarreal and she had hit him, choked him, and held a screwdriver and a knife to him and that he killed her in self-defense.

The evidence is such that a jury could have found beyond a reasonable doubt that on March 19, 1995, Villarreal went out on a date with another man. She planned to move to Liberal, Kansas, the next day for a new job. A fight took place between Villarreal and Borman, and Borman stabbed her. Villarreal died in approximately 15 minutes as a result of her stab wounds. Borman did nothing to try to save her life.

Borman kept Villarreal's body in a sleeping bag in his apartment until late June 1995, when he transported it to the field where it was found.

After Villarreal's death, Borman told numerous stories to their friends ranging from saying she could not come to the phone because of allergies and that she had gone and he did not know where she was, to passing on messages from her, while maintaining that although he had heard from her, he did not know where she was.

Borman raised diminished capacity as a defense. In support of this defense, Borman presented evidence that he had attended classes for the learning disabled when he was growing up and that he was self-abusive. When he was angry, he lied frequently and was suicidal. Marc Quillen, a clinical psychologist, testified on Borman's behalf. Quillen examined Borman and found him to be depressed, easily upset, and very volatile. According to Quillen, Borman is immature and impulsive and these problems mainly manifest themselves in interpersonal relationships. Quillen testi-

fied that Borman has a mild speech impediment and is considered intellectually borderline. He has a low frustration tolerance, severe social maladaptation, and low self-esteem, and does not handle problems well. Quillen provided five main mental disorder diagnoses for Borman: (1) intermittent explosive disorder; (2) schizoid personality disorder; (3) dysthymic disorder; (4) major depressive disorder; and (5) a learning disorder. Further, evidence indicated that Borman has a bad temper and hit himself in the head when he was angry. According to Quillen, a relationship with a woman not going Borman's way would be a prime time for his explosiveness to occur. Also, Quillen testified that Borman's problem-solving deficit affected what he did with Villarreal's body after she was killed. However, Quillen did not find anything to suggest that Borman was out of touch with reality, and testing showed that he tended to exaggerate the level of his psychological problems. Based on this evidence, the trial court provided the jury with an instruction on diminished capacity.

The jurors did not convict Borman of premeditated first-degree murder. Instead, they found him guilty of the lesser included offense of intentional second-degree murder. The State filed a motion for an upward durational departure in sentencing, which the trial court granted. The trial court sentenced Borman to 194 months in prison. Borman appealed his conviction to the Court of Appeals, alleging that the trial court's instruction on diminished capacity was in error. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

The pattern instruction in Kansas for diminished capacity provides: "Diminished mental capacity [not amounting to insanity] may be considered in determining whether the defendant was capable of forming the necessary intent (*set out specific element of the crime*). PIK Crim. 3d 54.12-B.

The defense counsel *requested* that the court give the following proposed instruction on diminished capacity to the jury: "Diminished mental capacity not amounting to insanity may be considered in determining whether the defendant was capable of forming the necessary intent for the *act to have been premeditation*." (Emphasis added.) Stating that it was a close call, the trial court agreed to

give a diminished capacity instruction. However, the trial court did not give the exact instruction which the defense counsel proposed. The trial court's instruction included two sentences. The first sentence followed Borman's proposed instruction, with a few minor changes. The second sentence followed the language of a recent case analyzing the diminished capacity defense. The trial court's diminished capacity jury instruction provided as follows:

"Diminished mental capacity may be considered in determining whether the defendant was capable of forming the necessary intent to premeditate.

"Mere personality characteristics, such as poor impulse control, short temper, frustration, feelings of dependency, 'snapping,' lack of concern for rights of other people, etc., does not constitute a mental disease [or] defect bringing the doctrine of diminished capacity into play."

At trial, the defense counsel objected to the second sentence in this instruction; his objection was overruled. Borman did not raise an objection to the first sentence of the instruction at trial.

During closing argument, the defense counsel argued that Borman did not have premeditation to commit this crime. For instance, the defense counsel stated to the jury: "We've never come in here and said that he didn't do it. He killed her. She died as a result of an argument that they had. The issue becomes whether there was premeditation there." Further, in regard to Borman's mental illness, the defense counsel stated: "It all goes into play when you look at whether there's premeditation here, whether he thought the matter out beforehand. If he's got an explosive disorder that causes him to erupt, that would be evidence tending to show that it wasn't premeditation."

The jury did not convict Borman of premeditated first-degree murder. Instead, it found Borman guilty of intentional, but not premeditated, second-degree murder.

On appeal, Borman objects to the diminished capacity instruction because it only stated that it affected the jury's decision regarding whether Borman intended to premeditate the killing. According to Borman, the instruction was in error because it did not allow the jury to consider diminished capacity as it related to whether he intended to kill the victim.

The decision to provide the jury with an instruction on the defense of diminished capacity is within the sound discretion of the trial court. *State v. Jackson*, 238 Kan. 793, 798, 714 P.2d 1368, *cert. denied* 479 U.S. 821 (1986). The trial court exercised that discretion and instructed the jury on diminished capacity in this case. The defense objected to the wording of the instruction, although for different reasons than asserted in this issue. The defense claimed that the instruction should be given but that its construction was incorrect.

"The standard of review for the objected-to jury instruction was stated in *Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 92, 671 P.2d 491 (1983): 'If jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal. [Citations omitted.]' " *State v. DeVries*, 13 Kan. App. 2d 609, 611-12, 780 P.2d 1118 (1989).

Borman is in no position to argue that the trial court erred in providing the first sentence of the diminished capacity instruction because this sentence was almost identical to the diminished capacity instruction which Borman requested. See *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982) ("Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review.").

Borman wanted the jury to be instructed that diminished capacity could be considered in determining whether he was capable of acting with *premeditation*. The jury was given such an instruction. Borman did not request that the jury also be instructed that diminished capacity could be considered in determining whether he was capable of forming the intent to kill. Borman's entire theory of his case, as argued in the opening statement, Quillen's testimony, and the closing argument, was that he acted without premeditation, not that he acted without the intent to kill. Borman's challenge as to the first sentence in the diminished capacity instruction fails.

Borman also challenges the second sentence of the diminished capacity instruction. This language is taken from *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991), and is a comment to PIK Crim. 3d 54.12-B. In *Wilburn*, the defendant requested a dimin-

ished capacity jury instruction, but the trial court refused to give it. Evidence was presented at trial that the defendant was not suffering from any mental disorder. Thus, this court affirmed the trial court's refusal to give a diminished capacity instruction. In so holding, this court stated:

"In summary, the criminal law concept of diminished capacity requires the presence of a mental disease or defect not amounting to legal insanity which a jury may consider in determining whether the defendant has the specific intent required for the crime charged. *Mere personality characteristics such as poor impulse control, a short temper, frustration, feelings of dependency, 'snapping,' lack of concern for the rights of other people, etc., do not constitute a mental disease or defect bringing the doctrine of diminished capacity into play.*

"Under the facts before us, evidence of diminished capacity was lacking. *Evidence that the defendant became frustrated over his marital problems, lost control, snapped, etc., go to personality characteristics and reactions to events rather than any underlying mental disease or defect.* Even had evidence of diminished capacity been presented, the giving of an instruction thereon is not required and is a matter of trial court discretion." 249 Kan. at 686. (Emphasis added.)

The trial court herein based the second sentence of its diminished capacity instruction on the italicized language in *Wilburn*. According to Borman, the facts in this case were dissimilar from those in *Wilburn* and did not support the additional language. In *Wilburn*, the defendant was not diagnosed with any mental disorders; the evidence presented at trial merely referred to his "personality characteristics." Thus, the *Wilburn* court held that a diminished capacity instruction was not necessary because the instruction did not apply to "mere personality characteristics."

However, in support of his position, Borman points to the evidence which demonstrates he had a mental illness, not just a mere personality problem. Psychologist Marc Quillen examined Borman and diagnosed him with five different psychological diagnoses. According to Borman, these are all serious mental disorders. Borman acknowledges that the disorders are *related* to personality defects, but he contends that they are serious mental disorders which rise above the level of mere personality defects. As such, Borman contends that this case is distinguishable from *Wilburn* and that *Wilburn* does not control in this situation.

We disagree. The expert who testified at trial on Borman's behalf presented evidence *both* of Borman's mental disorders and of his personality defects. For instance, as to Borman's personality defects, the expert testified that Borman was very volatile, easily upset, immature and impulsive in interpersonal relationships, had a low frustration tolerance and low self-esteem, and does not handle problems well. Thus, the extra sentence in the trial court's diminished capacity instruction clarified that this evidence regarding Borman's personality characteristics did not bring the doctrine of diminished capacity into play. However, under the instruction, the jury was still free to evaluate the evidence regarding Borman's mental disorders and determine whether such disorders negated Borman's ability to form the specific intent to premeditate. The second sentence of the diminished capacity instruction did not prevent this.

There was evidence Borman suffered from a mental disorder. However, even with this evidence, it was in the trial court's discretion to allow the instruction; the instruction was not automatically allowable upon presentation of this evidence. See *State v. Friberg*, 252 Kan. 141, 144-46, 843 P.2d 218 (1992) (defendant had a mental disorder, but this court affirmed the trial court's refusal to instruct on diminished capacity); *Wilburn*, 249 Kan. at 686 ("Even had evidence of diminished capacity been presented, the giving of an instruction thereon is not required and is a matter of trial court discretion."). Here, the trial court hesitantly agreed to provide a diminished capacity instruction based on the evidence presented. It did not abuse its discretion in providing such an instruction. However, there was also evidence presented at trial which related only to Borman's personality characteristics. The trial court wanted to ensure that the jury did not use this evidence in a diminished capacity analysis, so it added the second sentence to the diminished capacity instruction. When reading the instruction as a whole, it properly and fairly states the law as applied to the facts in the case.

Instructing on a negative always poses a problem. PIK does not recommend negative instructions, and this court warns against

their use. That, however, does not create reversible error in the instruction at issue.

Affirmed.