(116 P.3d 48)

No. 91,567

STATE OF KANSAS, *Appellee,* v. DERON MCCOY, JR., *Appellant.*

Opinion filed July 29, 2005.

*Rick Kittel,* assistant appellate defender, for appellant.

*Karen S. Smart,* assistant district attorney, *Keith E. Schroeder,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before GREENE, P.J., CAPLINGER and BUSER, JJ.

BUSER, J.: Deron McCoy, Jr., appeals his convictions for felony obstruction of official duty and misdemeanor battery. He alleges that the elements instruction pertaining to obstruction of official duty was clearly erroneous and that the evidence at trial was insufficient to convict him of the two offenses. We affirm.

## Factual and Procedural Background

This case arises out of a Hutchinson police investigation of a reported robbery. Deron McCoy, Jr., was operating the suspect car in a restaurant drive-through lane when he was confronted by police officer, Brice Burlie. McCoy maneuvered his car in such a way as to strike another car and quickly drove away, slightly injuring Officer Burlie who had hold of the car's door handle.

McCoy was charged by amended information with one count of aggravated battery and one count of obstruction of official duty. The obstruction count read that "[McCoy] did unlawfully, feloniously, knowingly and intentionally obstruct, resist or oppose a person, to-wit: **Officer Brice Burlie**; authorized by law to serve process, then and there in the discharge of an official duty, to-wit: **investigating a robbery**."

Prior to trial, McCoy's counsel filed a motion in limine stating in part:

"It would be irrelevant and immaterial and highly prejudicial for it to be known to the jury that the officers were in the course of an investigation for Robbery and that Mr. McCoy was their suspect. The State dismissed the Robbery charge against Mr. McCoy prior to the preliminary hearing. The Defendant would be willing to stipulate that Officer Burlie was in the course of a felony investigation."

At a hearing on the motion in limine, McCoy's counsel and the prosecutor announced a stipulation which would allow police officers to testify they were looking for the car driven by McCoy, but not to mention a robbery or that the car was considered stolen. A written stipulation also provided:

"STIPULATION OF EVIDENCE REGARDING A FELONY INVESTIGATION

The State of Kansas, by and through Assistant District Attorney, Terry Bruce, and the Defendant, by and through Assistant Regional Public Defender, Melissa French, stipulate on [sic] the following evidence: That on September 20, 2003,

while at 201 East 44th Street, Hutchinson, Reno County, Kansas, Officer Brice Burlie was discharged [*sic*] with the official duty of investigating a felony."

At trial, the written stipulation was admitted into evidence. In his testimony, Officer Burlie also stated he was investigating a felony at the time he approached McCoy.

Evidence at trial indicated that Officer Burlie was on routine patrol in Hutchinson when he observed a vehicle driven by McCoy that matched the description of the suspect vehicle. Officer Burlie recognized McCoy from two prior encounters at the Hutchinson Community College dormitories. McCoy's car was moving forward in the Burger King drive-through lane. Officer Burlie positioned his patrol vehicle behind McCoy's vehicle, whereupon he observed the car's parking or reverse lights activated. Officer Burlie stepped out of his patrol car, approached, and stood directly in front of the driver's side window, about a foot from McCoy.

At that time, Officer Burlie was wearing a police uniform with identifiable patches, walkie talkie, gun, and holster. He instructed McCoy to place the vehicle in park, put his hand on the steering wheel, and "don't move." McCoy responded by asking Officer Burlie, "What is the problem?" Officer Burlie replied, "[J]ust go ahead and place the vehicle into park; put your hand up on steering wheel. I'll explain to you what the problem is." Contrary to Officer Burlie's instructions, McCoy put the car in drive and accelerated forward, striking the vehicle ahead of it. Officer Burlie attempted to open the driver's side door to grab McCoy. Officer Burlie testified to the events which followed:

"As he struck the Ford Explorer, I was trying to pull up on the door handle realizing when striking the Ford Explorer he was pushing it, he still gave it gas to move it out of the way where he was able to pull off away from the vehicle, get around it so he could leave the scene. During that time my ring was stuck on [the door handle], pulling me forward along the same path that it was scraping up against the Ford Explorer—thinking it was going to drag me into it, too. It gave me a good jerk. Probably pulled me about two feet, and then I was able to pull my hand away from the door handle."

Officer Burlie testified that, as a result of this encounter, his finger had a "chunk" of skin torn away.

Prior to trial, McCoy's counsel filed proposed jury instructions with the court. The defendant's proposed elements instruction for obstruction of official duty read:

"The defendant is charged with the crime of obstructing official duty. The defendant pleads not guilty.

To establish this charge, each of the following claims must be proved:

1. That Officer Burlie was authorized by law to serve process;

2. That the defendant knowingly and willfully obstructed Officer Burlie in the investigation of a felony;

3. That the act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty;

4. That at the time the defendant knew or should have known that Officer Burlie was a law enforcement officer; and

5. That this act occurred on or about the 20th day of September, 2002, in Reno County, Kansas."

The trial court's instruction number 11 was identical to the elements instruction for obstruction of official duty proposed by McCoy's counsel with only one exception. Defense counsel's proposed instruction used the word "obstructed," while the court's instruction used the word "resisted" in setting forth the second element of the offense. There was no objection from either counsel at the instructions conference, and instruction number 11 was read to the jury—essentially as submitted by defense counsel.

The jury returned convictions for felonious obstruction of official duty and the lesser included offense of battery.

### Obstruction of Official Duty Instruction

McCoy claims that instruction 11 setting forth the elements of the crime of obstruction of official duty was clearly erroneous. In particular, McCoy states that the first element of this instruction, "That Officer Burlie was authorized by law to serve process"; is improperly taken from PIK Crim. 3d 60.08 (Obstructing Legal Process), while the remaining four elements of this instruction are derived from PIK Crim. 3d 60.09 (Obstructing Official Duty). As a result, McCoy argues that this first element "has no relevance to this case [and] . . . was unsupported by the evidence and misleading to the jury." He also observes that the first element of PIK Crim. 3d 60.09 (Obstructing Official Duty) instruction, was not

given to the jury for its consideration and verdict. McCoy concludes: "Thus, the jury was not instructed on every essential element of the crime of obstructing official duty."

The State contends that instruction 11 is identical to the instruction submitted by the defense, the defendant's proffered instruction cited "PIK Crim. 3d 60.09" (Obstructing Official Duty) as authority for the instruction, the defense did not object to the submission of this instruction, and the totality of the instruction correctly allowed the jury to consider the essential elements of obstruction of official duty.

The State and McCoy agree that this court should apply the clearly erroneous standard of review because McCoy did not object to instruction number 11. See *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). K.S.A. 2004 Supp. 22-3414(3) provides:

> "No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

See *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001). "An instruction is clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict had the jury been properly instructed." *State v. Graham*, 275 Kan. 831, 833, 69 P.3d 563 (2003).

Of particular importance to this claim of error is the fact that McCoy not only failed to object, his counsel proposed the very language that, on appeal, McCoy now claims was clearly erroneous. As a result, McCoy invited the error, which precludes him from complaining about it on appeal. See *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982) ("Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review."); *State v. Kleypas*, 272 Kan. 894, 1080, 40 P.3d 139 (2001) (error in omitting instruction invited where defendant opposed the instruction); *State v. Fulton*, 269 Kan. 835, 846, 9 P.3d 18 (2000) ("jury instruction requested by defense counsel improperly com-

plained of on appeal"); *Borman*, 264 Kan. 476, 480, 956 P.2d 1325 (1998). ("Borman is in no position to argue that the trial court erred in providing the first sentence of the diminished capacity instruction because this sentence was almost identical to the diminished capacity instruction which Borman requested.").

The application of the invited error doctrine to jury instructions is widely recognized. See *Maiz v. Virani*, 253 F.3d 641, 677 (11th Cir. 2001) (an erroneous instruction is not plain error if the defendant requested the instruction); *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998) (the giving of a requested instruction precludes reversal of conviction and any habeas relief even if trial court erred in giving the instruction); *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 607 (5th Cir. 1991) (invited error doctrine is applicable to an instruction which results in conviction for a crime not charged in the indictment).

Our consideration of the merits of McCoy's claim assures us that, even if McCoy's claim were not barred from appellate consideration, it is without merit. The elements of obstruction are found in K.S.A. 21-3808. See *State v. Shirley*, 277 Kan. 659, 662, 89 P.3d 649 (2004) (elements are taken from the statute). K.S.A. 21-3808 states in part:

"Obstructing legal process or official duty is knowingly and intentionally obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of the court, or in the discharge of any official duty."

To prove obstruction of official duty, then,

"the State was required to prove that an identified law enforcement officer was carrying out some official duty, and that each defendant knowingly and willfully obstructed or opposed that officer in the performance of that duty. The State was also required to show that each defendant knew or should have known that the person he opposed was a law enforcement officer. [Citation omitted.]" *State v. Parker*, 236 Kan. 353, 364-65, 690 P.2d 1353 (1984).

As stated in *State v. Timley*, 25 Kan. App. 2d 779, 785, 975 P.2d 264 (1998), *rev. denied* 266 Kan. 1115 (1999), "The statute thus encompasses two different possible scenarios—one in which an individual is obstructed in the service or execution of process or

order of a court, the other in which an officer is obstructed in the discharge of any official duty."

The same distinction was present in G.S. 1949, 21-717, which K.S.A. 21-3808 "follows . . . in all substantive respects." *State v. Lee*, 242 Kan. 38, 40, 744 P.2d 845 (1987). The former statute established obstruction "[i]f any person or persons shall knowingly and willfully obstruct, resist or oppose any sheriff or other ministerial officer in the service or execution or in the attempt to serve or execute any writ, warrant or process, or in the discharge of any official duty . . . ." G.S. 1949, 21-717.

At the outset, the instruction submitted to the jury did contain surplusage. In particular, it directed the jury to determine if Officer Burlie was "authorized by law to serve process." This particular element is essential to the offense of obstruction of legal process, but not essential to the offense of obstruction of legal duty. K.S.A. 21-3808. PIK Crim. 3d 60.09 makes this clear by setting forth the first element of obstruction of legal duty: "That _____ was authorized by law to _____." In the "Notes on Use" the PIK committee states: "In the second blank of Element No. 1, the Court should insert the act or acts the person named in the first blank was authorized to perform." This instruction does not mention the necessity of proving an officer was authorized to serve process, but it does require the State to prove that Officer Burlie was authorized to perform some official duty. Thus, the first element of instruction 11 was erroneously given, but it was not an essential element to prove the particular charge against McCoy.

The jury was not instructed according to the form of the first element of PIK Crim. 3d 60.09. We are convinced, however, that the jury did consider and determine the substance of the first element of that instruction—that Officer Burlie was engaged in an official duty at the time of his encounter with McCoy. Two factors dictate this conclusion. First, the parties submitted a written stipulation of evidence that "Officer Burlie was discharged with the official duty of investigating a felony." Second, the third element of instruction 11 required the jury to determine "[t]hat the act of the defendant substantially hindered or increased the burden of the officer *in the performance of the officer's official duty*." (Em-

phasis added.) As a result, the jury was appropriately instructed to determine beyond a reasonable doubt that Officer Burlie was engaged in an official duty, to-wit: investigating a felony at the time of the incident.

Finally, defense counsel conceded during closing argument that the defense was not contesting that Officer Burlie was engaged in the performance of his duties at the time of his encounter with McCoy. McCoy's counsel stated in part:

"In regards to the obstruction charge first, remember the obstruction is of Officer Burlie in the Burger King drive-thru . . . . Okay. One of the things you are going to get is a statement. We agree that Officer Burlie was in the course of the investigation of a felony, and that's one of the important parts that you have in your instructions. Okay. We don't disagree with that. What we disagree with is there was any type of obstruction."

A fair reading of the record reveals that not only was the jury appropriately instructed in the necessity of finding Officer Burlie was engaged in the performance of his duty, but this fact was not essential to McCoy's defense. Having considered the merits of McCoy's claim we are not "firmly convinced that there is a real possibility the jury would have rendered a different verdict," *State v. Graham*, 275 Kan. at 833, had the jury been instructed using the exact verbiage of PIK Crim. 3d 60.09.

### Sufficiency of Evidence of Obstruction of Official Duty

McCoy complains that there was insufficient evidence to convict him of obstruction of official duty. In reviewing this claim, we review all of the evidence viewed in a light most favorable to the State. The question is whether a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

In particular, McCoy argues that there was no evidence which established Officer Burlie was authorized by law to serve process. We agree. However, as discussed previously, McCoy was charged with obstructing official duty, *not* obstructing legal process. See K.S.A. 21-3808(a) ("[o]bstructing legal process *or* official duty [Emphasis added.])" Any allegation that Officer Burlie was authorized to serve process or any jury instruction requiring such a

finding was surplusage and not necessary to McCoy's conviction for obstruction of official duty.

The evidence at trial showed that Officer Burlie was a uniformed, clearly identified law enforcement officer engaged in his official duty of attempting to stop and investigate McCoy for a felony offense. In willful disregard of Officer Burlie's order to place the vehicle in park, put his hand on the steering wheel, and "don't move," McCoy placed the vehicle in drive and drove off with Officer Burlie's hand on the door handle. These facts obviously support McCoy's conviction. A rational jury could have concluded from this evidence that McCoy knowingly and willfully obstructed or opposed a law enforcement officer in the performance of an official duty. See *State v. Gasser*, 223 Kan. 24, 30, 574 P.2d 146 (1977) ("breaking . . . and running" from an officer attempting to effect arrest "was conduct unlawful under K.S.A. 21-3808").

## Sufficiency of Evidence of Battery

McCoy maintains the evidence was insufficient to prove beyond a reasonable doubt either that his conduct was reckless or that it caused the injury to Officer Burlie. McCoy does not dispute the definition of reckless conduct given to the jury, which required it to find "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger."

It should be obvious that a rational jury could find McCoy's conduct reckless beyond a reasonable doubt. Using the car as a ram, McCoy struck another vehicle and accelerated from a narrow lane with Officer Burlie in close proximity and hemmed in by a building. This combination of McCoy's evasive driving, which caused a vehicular accident, in close quarters with Officer Burlie in the immediate vicinity provides a rational basis to find McCoy created an imminent danger to Officer Burlie and showed a conscious and unjustifiable disregard of that danger.

McCoy next contends there was no evidence to show his awareness that Burlie had grabbed the door handle. At the outset, the State was not obliged to prove McCoy's precise state of mind at the time he decided to flee from Officer Burlie. See *State v. Spicer*,

30 Kan. App. 2d 317, 324, 42 P.3d 742, *rev. denied* 274 Kan. 1117 (2002) (the recklessness element does not transform battery into a specific intent crime). Recklessness is shown where a person takes "an unjustifiable risk which *results* in a harmful touching to the person of another." (Emphasis added.) *Spicer*, 30 Kan. App. 2d at 324. Thus, recklessness may be present even where a defendant has not foreseen the specific injury which will occur. See *State v. Davidson*, 267 Kan. 667, 682-84, 987 P.2d 335 (1999) (construing reckless second-degree murder).

Finally, McCoy argues that he did not cause Officer Burlie's injury because "it was Officer Burlie's actions that created the contact with [McCoy's] car." The State responds that "if [McCoy] had obeyed Officer Burlie's commands from the get-go, then Officer Burlie would not have been reaching for the door handle of the vehicle."

McCoy is essentially arguing that Officer Burlie's decision to grab the door handle was an intervening, superseding cause of his injury. This area of the law was discussed in *State v. Anderson*, 270 Kan. 68, 69, Syl. ¶ 6, 12 P.3d 883 (2000), where our Supreme Court stated:

"In an action for injuries suffered in a accident resulting from a police pursuit, the issue of foreseeability with respect to defendant focuses upon his point of view, that is, whether the harm that occurred was a reasonably foreseeable consequence of the defendant's conduct at the time he or she acted. Since the officer's conduct was a direct and specific response to defendant's conduct, the claim that the officer's conduct was a superseding cause of the accident can be supported only through a showing that the officer's conduct was so unusual, abnormal, or extraordinary that it could not have been foreseen."

Here, McCoy maintains he "had no control over Officer Burlie's decision and, in fact, could not have stopped him from causing this contact from inside the car." As *Anderson* provides, the issue is whether McCoy's conduct reasonably caused Officer Burlie's conduct, not whether McCoy could have somehow prevented this injury. Since it is not unusual, abnormal, or extraordinary that a police officer would attempt to open a car door to apprehend a suspect who is attempting to flee a felony investigation—especially when the car is stopped and apparently blocked in—the jury could prop-

erly conclude it was McCoy, not Officer Burlie, who proximately caused the injury. See *Anderson*, 270 Kan. at 73 (characterizing the analysis as "proximate cause in a criminal context"). We conclude a rational jury could have found the defendant guilty of battery beyond a reasonable doubt.

Affirmed.