NOT DESIGNATED FOR PUBLICATION

No. 127,804

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KYLE SCOTT MONTGOMERY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE YOUNG, judge. Submitted without oral argument. Opinion filed January 16, 2026. Affirmed.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and PICKERING, JJ.

ARNOLD-BURGER, J.: After leading police on a high-speed chase, Kyle Scott Montgomery was convicted by a jury of aggravated battery, fleeing or attempting to elude a police officer, and interference with a law enforcement officer. He first challenges his convictions for fleeing or attempting to elude a police officer and interference with a law enforcement officer as multiplicitous. But because he failed to preserve the issue for appeal, and we invoke our prudential authority to decline to consider it, it fails. Second, he challenges his conviction for interference with a law enforcement officer as not supported by sufficient evidence. But he invited the error by

1

asking the jury to find him guilty of that offense as a trial strategy in an attempt to avoid a conviction for the eluding charge. So that claim also fails. Accordingly, we affirm the decision of the district court.

FACTUAL AND PROCEDURAL HISTORY

Officer Spencer Andrew Kochanowski observed a vehicle being driven by Montgomery and recalled that Montgomery's Kansas driver's license was suspended. Acting on this knowledge, Officer Kochanowski initiated a traffic stop. The vehicle initially complied, pulling into a driveway. Within moments, however, the vehicle reversed course—backing up before accelerating northbound. Kochanowski testified he had already activated his patrol vehicle's emergency lights and siren.

What followed was a dangerous pursuit through residential neighborhoods. The chase persisted for approximately five minutes, with speeds reaching between 70 and 75 miles per hour and involving seven or eight directional changes. Throughout the pursuit, Montgomery committed numerous traffic violations: he ran multiple stop signs, reached 74 mph in a 40 mph zone, and repeatedly violated lane usage laws.

The pursuit reached its violent conclusion on West Magnolia Street. Montgomery's vehicle traveled westbound briefly on Magnolia before veering into oncoming traffic, where it collided with an eastbound Jeep. The officer witnessed Montgomery exit through the passenger side window and flee southbound on foot. Montgomery's flight ended when he ran into a local business, where officers tackled him to the ground and arrested him.

At trial, the State articulated its theory precisely: "The interference occurred when . . . Officer Kochanowski attempted to initiate that traffic stop at the very outset, and then

the alleged flee and elude ensued." Defense counsel's response proved telling—he conceded: "The State has absolutely met their burden on [interference]."

The jury returned guilty verdicts on the charges at issue in this appeal. The district court imposed 27 months' imprisonment for fleeing and eluding, and a 12-month jail sentence for interference with a law enforcement officer.

Montgomery timely appeals.

ANALYSIS

*Montgomery fails to preserve his claim that the charges of fleeing or eluding and interference with law enforcement are multiplicitous.*

For the first time on appeal, Montgomery argues that based on how the State charged Montgomery and prosecuted him, both the fleeing and eluding and the interference with a law enforcement officer convictions are based on the same conduct. The instructions and the State's argument was that the interference occurred when Montgomery interfered with the officer's discharge of his duty: to wit, making a traffic stop. The fleeing and eluding occurred when he fled or attempted to elude the police officer. As a result, he should not have been convicted of both and should have been sentenced solely on the more specific crime as required by K.S.A. 21-5109(d)(2). He believes the more specific crime is the felony fleeing and eluding charge and the misdemeanor interference charge should be dismissed and his 12-month concurrent sentence on that charge vacated.

We must first determine whether to exercise our prudential authority to consider this unpreserved constitutional claim. Generally, appellate courts do not address issues raised for the first time on appeal. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

3

But an appellate court may consider a newly raised issue when certain recognized exceptions apply. 314 Kan. at 283. These exceptions include:

> "'(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the trial court may be affirmed because it was right for the wrong reason.'" *In re N.E.*, 316 Kan. 391, 407-08, 516 P.3d 586 (2022).

Kansas Supreme Court Rules also require that appellants raising issues for the first time on appeal must explain why those issues are properly before the appellate court. See Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) ("If the issue was not raised below, there must be an explanation why the issue is properly before the court."). In other words, appellants who rely on a preservation exception must invoke that exception and argue that it applies. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). An appellant who fails to do so is deemed to have waived and abandoned any exceptions to the preservation rule. *In re N.E.*, 316 Kan. at 408. And even if a recognized exception to this general rule may apply, we are under no obligation to review the new claim and we need to provide no reason for the denial. *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024).

Montgomery admits that he did not raise this issue before the district court, thus giving the district court a chance to address it and make a determination on multiplicity. And he sets forth no reason for this failure. He asserts the issue is properly before the court because it raises a purely legal question arising on undisputed or admitted facts and involves a fundamental right. Although the State agrees that the issue presents a purely legal question arising on undisputed or admitted facts and this court may exercise its prudential authority to decide it, this is not the same as joining in Montgomery's request for consideration. And even if it did it would make no difference. Our Supreme Court has made it clear that this court is not to ignore this prudential rule simply because the parties

4

may agree that an unpreserved issue should be considered or because it is "lured into exploring uncharted legal frontiers." See *State v. Scheetz*, 318 Kan. 48, 61-62, 541 P.3d 79 (2024).

Montgomery also fails to confront the fact that this court has addressed the precise question presented—whether convictions for fleeing/eluding a police officer and interference with law enforcement are multiplicitous under K.S.A. 21-5109(d)—multiple times with consistent results. Montgomery cites none of these decisions, one of which is controlling Supreme Court precedent. See, e.g., *State v. Castleberry*, 301 Kan. 170, 187, 339 P.3d 795 (2014) (eluding arrest [the car chase] and resisting arrest [requiring officers to physically subdue him] are not multiple acts); *State v. Blazier,* No. 94,677, 2007 WL 570178, at *5 (Kan. App. 2007) (unpublished opinion) (holding convictions of fleeing and obstruction of official duty are not multiplicitous); *State v. Sutton*, No. 89,791, 2004 WL 324230, at *4 (Kan. App. 2004) (unpublished opinion) (holding convictions for obstructing official duty and fleeing and eluding a police officer were not multiplicitous because each requires proof of different elements). Failure to support a point with pertinent authority or show why it remains sound despite contrary authority equates to failing to brief the issue. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). In short, this is not a new claim that would not have been apparent at the time of trial.

We elect not to consider Montgomery's newly minted constitutional challenge to his convictions. Although we are under no obligation to provide a reason for our finding, the burden to convince us we should hear his new claim is on Montgomery, and he has failed to meet that burden.

Thus, Montgomery's claim that his convictions were multiplicitous fails.

*Montgomery alleges both sufficiency of the evidence and instructional error related to the interference charge require reversal of his conviction for interference with a law enforcement officer.*

Montgomery asserts, for the first time on appeal, that the State failed to prove Officer Kochanowski possessed authorization to "serve process," as charged in the complaint, thereby rendering the evidence insufficient to support his interference conviction. A sufficiency challenge ordinarily requires no preservation. *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). Yet, as the State points out, Montgomery also claims, in passing, that his defense counsel did not object to the failure to instruct on every essential element, an instructional error claim that can also be considered for the first time on appeal. See K.S.A. 22-3414(3) (when a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous).

*We first examine the factual background for Montgomery's claim.*

Because it is central to Montgomery's claims on appeal, the State's charging document, the instructions, and the evidence presented merit careful attention before we examine the legal issue.

The third amended complaint charged Montgomery with interference under K.S.A. 21-5904(a)(3), alleging he "did unlawfully and knowingly obstruct, resist, or oppose a person authorized by law to serve process, to-wit:  Spencer Kochanowski, *in the discharge of any official duty*." (Emphasis added.)

He was also charged with felony fleeing or attempting to elude a police officer.

At the close of evidence, the jury was instructed as follows on this charge.

"The defendant is charged in Count 3 with Interference with Law Enforcement. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved: 1.) Salina Police Department Officer Spencer Kochanowski was discharging an official duty, attempting to conduct a traffic stop; 2.) The defendant knowingly resisted Officer Kochanowski in discharging that official duty; 3.) The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty; 4.) At the time, the defendant knew or should have known that Officer Kochanowski was a law enforcement officer; 5.) This act occurred on or about August 3rd, 2023, in Saline County, Kansas.

"The State must prove that the defendant acted knowingly. A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State."

This instruction mirrors PIK Crim. 4th 59.030 (2023 Supp.).

The State addressed this charge in closing:

"As to the Interference with Law Enforcement, the theory behind this one is pretty simple. The interference occurred when Mr. Kochanowski—or, Officer Kochanowski attempted to initiate that traffic stop at the very outset, and then the alleged flee and elude ensued. That is the primary nexus, if you will, for that alleged offense against Mr. Montgomery.

"Number 3 in that instruction says, The act of the defendant substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

"As part of these instructions, you're not required to throw away all of your own personal life experiences before you go and deliberate, and I imagine among the 12 of you, there's probably somebody back there who's been involved in a traffic stop before,

7

no matter how slight. And I would submit to you that the five to six-minute high-speed inner city police chase we saw that resulted after Officer Kochanowski attempted to stop Kyle Montgomery, that, indeed, substantially hindered his burden to effect that traffic stop."

Montgomery responded to the allegations regarding the interference charge in his closing statement:

"I want you to look at Count 3, which is contained in Instruction Number 6. That's Interference with Law Enforcement. And that says that Salina Police Officer Kochanowski was discharging an official duty, attempting to conduct a traffic stop, and that the defendant resisted him in discharging that duty by not yielding to that traffic stop. The State has absolutely met their burden on that.

"Again, I'm not here to excuse this behavior or excuse the facts. That is the facts. Instruction Number 6, Count Number 3, Interference with Law Enforcement. You can find Mr. Montgomery guilty of Count 3, but he is not guilty of Count 2, that flee and elude, because the State has not proven beyond a reasonable doubt each and every element."

And defense counsel concluded as follows:

"At the end of the day, I ask you to very carefully go through each one of the jury instructions, very carefully weigh the actual evidence that the State produced, look carefully at the evidence that was not produced, and return verdicts of not guilty on Counts 1 and 2, except on the—possibly the lesser-included of Count 1—*and guilty of the Interference, because that's what happened.* Thank you." (Emphasis added.)

And finally in rebuttal the State noted:

"As to the Interference with Law Enforcement, I'm not going to spend any time on that. The defense concedes as much. But the State believes that it's the defense's

8

contention, or attempt to avoid the Flee and Attempt to Elude charge by arguing that, Well, you know, he is guilty of interfering with law enforcement, just not fleeing or attempting to elude."

So the defense theory was clear. It wanted the jury to find Montgomery guilty of the misdemeanor interference charge, apparently recognizing some criminal behavior in this dangerous chase, but not guilty of the felony fleeing and attempted eluding charge. It was a clear trial strategy.

*Montgomery invited the error.*

With that background in mind, Montgomery fails to address a critical fact in his sufficiency of the evidence and instructional error claim: defense counsel encouraged the jury to find him guilty of the interference of law enforcement charge as the jury was instructed. See *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021) (holding that parties may not complain of an error which they invited). So we must first determine whether he invited the error of which he now complains.

Whether the doctrine of invited error applies is a question of law subject to unlimited review. There is no bright-line rule for application of the doctrine. The party's actions inducing a court to make the claimed error and the context in which those actions occurred must be scrutinized to decide whether to employ the doctrine. *State v. Slusser*, 317 Kan. 174, 179-80, 527 P.3d 565 (2023).

Here, Montgomery challenges the sufficiency of the evidence to convict him, yet he advised the court, the prosecutor, and more importantly the jury that the State had met its burden on the interference of law enforcement charge and he was guilty of it. In other words, the evidence was sufficient and he requested the jury follow the interference of a

9

law enforcement officer instruction that it was given. We cannot think of any situation that presents clearer support for an invited error finding than this one.

Several cases are instructive in reaching this conclusion. In *State v. Hebert*, 277 Kan. 61, 78, 82 P.3d 470 (2004), our Supreme Court found invited error when counsel, "for strategic reasons," failed to cross-examine a witness or object to him being recalled to the stand, then tried to argue on appeal that the testimony should not have been allowed. And in *In re Care & Treatment of Emerson*, 52 Kan. App. 2d 421, 433, 369 P.3d 327 (2016), this court found that Emerson's counsel invited the jury to conclude that the State had met its burden of proof regarding whether Emerson had a mental abnormality—a prerequisite to finding him to be a sexual predator—by admitting in his closing argument "'[w]e're not contesting that he does have a mental abnormality. He does . . . .'"

Similar results can be found involving claims of instructional error. In *State v. Angelo*, 287 Kan. 262, 280, 197 P.3d 337 (2008), the defense counsel took an "all-or-nothing" approach at trial and asked the court *not* to give a lesser included offense instruction. Our Supreme Court found that because Angelo requested that the instruction not be given, he was barred from claiming the court erred in acceding to his request. And finally, in *State v. Kirtdoll*, 281 Kan. 1138, 1150-51, 136 P.3d 417 (2006), the court found invited error when Kirtdoll not only failed to object to the giving of an eyewitness instruction, but he also championed the use of the instruction over the State's objection.

But even if this were not invited error, Montgomery's claim of instructional error fails on the merits.

*The jury instruction given was legally appropriate.*

When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine if it was clearly erroneous. K.S.A.

10

22-3414(3). "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024).

Because Montgomery failed to object to the instruction about which he now complains, the clearly erroneous standard applies to our review. K.S.A. 22-3414(3). Montgomery does not meet his burden.

Montgomery challenges the legal sufficiency of the instruction. The heart of his argument rests on statutory interpretation of the unlawful interference with law enforcement statute—a question of law receiving unlimited review. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). If the statute is interpreted in the way he proposes, then he argues the jury was wrongly instructed and, as a result, the evidence was insufficient to support a violation of the law. So we turn to the statute.

Interference with law enforcement is defined as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." (Emphasis added.) K.S.A. 21-5904(a)(3).

The jury instruction told the jury that it must find that the officer was discharging an official duty, attempting to conduct a traffic stop; that Montgomery knowingly resisted the officer in discharging that official duty; and Montgomery's actions substantially hindered or increased the burden of the officer in the performance of the officer's official duty.

11

Montgomery contends that "'any person authorized by law to serve process'" is an element of the offense, requiring the State to prove that Officer Kochanowski possessed authorization to serve civil writs or warrants. In other words, he contends that the proper reading of K.S.A. 21-5904(a)(3) should be as follows:

> "(a) Interference with law enforcement is:
>
> . . . .
>
> (3) knowingly obstructing, resisting or opposing any person authorized by law to serve process
>
> [A] in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or
>
> [B] in the discharge of any official duty."

The alternative reading, the one assumed by the instruction given, and recommended by the Pattern Instructions for Kansas Criminal Advisory Committee as evidenced by PIK Crim. 4th 59.040, is

> "(a) Interference with law enforcement is:
>
> . . . .
>
> (3) knowingly obstructing, resisting, or opposing any person authorized by law
>
> [A] to serve process in the service or execution of in the attempt to serve or execute any writ, warrant, process or order of the court, or
>
> [B] in the discharge of any official duty."

In support of this interpretation the Notes on Use to the PIK instruction explain:

> "K.S.A. 21-5904(a)(3) describes two different kinds of interfering with law enforcement: a) obstructing the service or execution of a writ, warrant, process, or order of a court; and b) obstructing in the discharge of any official duty. The Committee believes that PIK 4th 59.030 should be used when the offense charged is obstructing the service or execution of a writ, warrant, process or court order, and PIK 4th 59.040 should

12

be used when the offense charged is obstructing an officer in the discharge of any other official duty." PIK Crim. 4th 59.040 (2023 Supp.).

Although the use of PIK instructions is not mandatory, our Supreme Court strongly recommends their use.

> "'The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction, or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed.'" *State v. Dias*, 263 Kan. 331, 335, 949 P.2d 1093 (1997) (quoting *State v. Moncla,* 262 Kan. 58, Syl. ¶ 5, 936 P.2d 727 [1997]).

Montgomery also fails to acknowledge that, just as the PIK Committee acknowledged, Kansas courts have long recognized that K.S.A. 21-5904(a)(3) creates two distinct theories of liability. A panel of this court recently reiterated in *State v. Dickerson*, No. 125,529, 2024 WL 62834, at *3 (Kan. App. 2024) (unpublished opinion), that "there are two means by which interference may be committed: (1) obstructing the service of a warrant or other legal process, and (2) obstructing the discharge of any official duty." Although this was an unpublished opinion, the same interpretation stretches back decades. See, e.g., *State v. McCoy*, 34 Kan. App. 2d 185, 190-91, 116 P.3d 48 (2005) (statute "'encompasses two different possible scenarios'"); *State v. Stewart*, 31 Kan. App. 2d 357, 359, 65 P.3d 555 (2003) (same); *State v. Timley*, 25 Kan. App. 2d 779, 785-86, 975 P.2d 264 (1998) (same).

The district court here followed this established practice, selecting the instruction matching the facts—Officer Kochanowski was discharging an official duty by conducting a traffic stop, not by serving legal process. Montgomery's purely textual argument—that

"any person authorized by law to serve process" modifies all subsequent clauses—contains no textual or historical analysis of K.S.A. 21-5904(a)(3) beyond his initial grammatical claim. And, failure to support a point with pertinent authority or failure to show why a point remains sound despite a lack of supporting authority, or in the face of contrary authority, equates to failing to brief the issue. *Meggerson*, 312 Kan. at 246.

In conclusion, we find that even if Montgomery had not invited the error of which he now complains, the district court properly instructed the jury under the official duty theory of interference with a law enforcement officer, and the facts supported both the charging document and the instructions.

Affirmed.

* * *

PICKERING, J., concurring:  I agree with the well-reasoned opinion except with respect to Montgomery's multiplicity argument. Instead, I would review the unpreserved issue relating to K.S.A. 21-5109(d) but, as explained below, find that his argument falls short.

Montgomery contends that his criminal offenses of interference with law enforcement, a violation of K.S.A. 21-5904, and fleeing or attempt to elude a police officer, a violation of K.S.A. 8-1568, are multiplicitous under K.S.A. 21-5109(d). His multiplicity claim meets one of the three exceptions to the preservation rule:  His argument involves a newly asserted theory raising only a question of law arising from admitted or proven facts and which is finally determinative of the case. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Additionally, from my reading of Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36), when raising an issue for the first time on appeal, an appellant is not required to explain why the issue was not raised in district

14

court. Because Montgomery's claim involves only a question of law on proved or admitted facts, I would address the issue.

*Applying K.S.A. 21-5109*

When the defendant's same conduct "may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes." K.S.A. 21-5109(a). There are exceptions to this provision, including K.S.A. 21-5109(d)(1), which provides:

> "(d) Unless otherwise provided by law, when crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct, the defendant:

> (1) May not be convicted of the two crimes based upon the same conduct."

Montgomery contends that interference with law enforcement and fleeing or attempt to elude differ only in that interference with law enforcement is defined to prohibit a designated kind of conduct generally—not obeying law enforcement—and fleeing or attempt to elude prohibits a specific instance of such conduct, namely by resisting a police officer while driving a vehicle.

The State responds that the harm of the two offenses are "distinct criminal acts" and neither is the more specific offense. According to the State, the offense of interference with law enforcement and the fleeing or attempt to elude offense were formed from two different harms or injuries: The former was due to Montgomery's initial flight from Officer Kochanowski, while the latter was due to Montgomery's collision with the Jeep.

15

While the two offenses target different theories of liability, realistically, evidence of the two criminal acts may overlap. To this point, *State v. Alston*, 318 Kan. 979, 551 P.3d 16 (2024), is instructive. In *Alston*, the Kansas Supreme Court considered a similar multiplicity argument under K.S.A. 21-5109(d). There, the defendant argued that his convictions for first-degree murder, proved under a theory of aiding and abetting, and conspiracy to commit murder were convictions for the same kind of conduct. Under his theory, because of their general and specific offense relationship, aiding and abetting and conspiracy to commit murder are multiple convictions under K.S.A. 21-5109(d).

Unpersuaded by this argument, the *Alston* court explained: "[*W*]*hile there may be overlap* between the proof of aiding and abetting and conspiracy, the two statutes are aimed at different evils and serve different purposes . . . . " (Emphasis added.) 318 Kan. at 987-88. The crime of aiding and abetting is focused on the agreement between the parties, while conspiracy holds "the defendant liable as a principle for a substantive crime regardless of whether the defendant agrees with others to commit the crime." 318 Kan. at 988. Since each crime is directed at a different theory of liability, the convictions are "for different kinds of conduct. Neither is more general nor more specific than the other . . . ." 318 Kan. at 988.

Likewise, the State's case included some evidentiary overlap. At closing arguments, the State "argued that Montgomery's conduct at the beginning of the chase (which justified the interference with law enforcement charge), also provided the basis for inferring that Montgomery acted knowingly to flee from Officer Kochanowski." Yet, as *Alston* explains, two crimes—which may overlap in terms of proof—"are aimed at different evils and serve different purposes . . . ." 318 Kan. at 988.

As we can see in this case, the crimes of interference with law enforcement and fleeing or attempting to elude target different theories of liability. Interference with law enforcement's focus is on the failure to adhere to or resisting a police officer, whereas

16

fleeing or attempting to elude's focus is on jeopardizing public safety. See K.S.A. 21-5904(a); K.S.A. 8-1568(b)(1). K.S.A. 8-1568(b)(1) lists six distinct ways that fleeing or attempting to elude causes harm to public safety:

"(A) Fails to stop for a police road block;

"(B) drives around tire deflating devices placed by a police officer;

"(C) engages in reckless driving as defined by K.S.A. 8-1566, and amendments thereto;

"(D) is involved in any motor vehicle accident or intentionally causes damage to property;

"(E) commits five or more moving violations; or

"(F) is operating a stolen motor vehicle."

Here, Montgomery's resistance, resulting in substantially hindering or increasing the officer's burden in performing his official duty, and Montgomery's reckless driving, causing a motor vehicle accident with another vehicle, are distinct harms or injuries. As the accident with the Jeep demonstrates, Montgomery's driving unquestionably placed the public in harm's way.

To illustrate this point, we can review each offense's jury instructions. For interference with law enforcement, the jury was instructed to find whether Montgomery's act of knowingly resisting Officer Kochanowski in discharging that official duty "substantially hindered or increased the burden" of the officer's performance of his official duty. In contrast, the jury was instructed to find whether Montgomery "knowingly drove through an intersection, causing a collision involving another driver" for the fleeing or attempt to elude offense. The jury had to find the harm to public safety with the latter offense. Additionally, each offense's intent is distinct from the other.

Overall, while the two criminal convictions may overlap, the prohibited acts involve separate and specific harms. The two offenses are different kinds of conduct with

17

neither crime being the more specific offense due to the different theory of liability. See *Alston*, 318 Kan. at 988. As we saw in *Alston*, here, the two statutes "fall outside the prohibitions of K.S.A. 21-5109(d)." 318 Kan. at 988. I would therefore rule that Montgomery's multiplicity argument is lacking and affirm the convictions. See K.S.A. 21-5109(a).