No. 54,135

STATE OF KANSAS, *Appellant*, v. DANIEL SMITH a/k/a CHARLES C. STACY, *Appellee.*

(652 P.2d 703)

Opinion filed October 22, 1982.

*Kyle G. Smith,* acting county attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Jay W. Vander Velde,* county attorney, were with him on the brief for appellant.

*Duane D. Guy,* of Guy, Helbert, Bell & Smith, Chartered, of Emporia, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the State under K.S.A. 22-3602(*b*)(3) from an order of the Lyon District Court in an extradition proceeding, refusing the Governor's Warrant and dismissing the action. The defendant, Daniel Smith a/k/a Charles C. Stacy, was charged with being a fugitive from justice under the Uniform Criminal Extradition Act (K.S.A. 22-2701 *et seq.*) based upon several complaints charging him with passing felony bad checks in the amount of approximately $14,500 in the State of New Hampshire.

Briefly, the facts are these. The Lyon county attorney filed a fugitive from justice complaint against the defendant in October 1981, based upon New Hampshire warrants for the defendant. A search warrant was also issued. The defendant was arrested and taken before the Lyon County District Court on October 14, 1981. A hearing was set on the Governor's Warrant for November 13, 1981. By that date, the Governor's Warrant had not been received and the matter was continued until January 4, 1982. At the November hearing counsel for the defendant indicated that he had substantial evidence, including both documents and witnesses, to show that the defendant was in Emporia, Kansas, at the time the bad checks were passed in New Hampshire. He gave the county attorney copies of the documentary evidence which he proposed to introduce and a list of proposed witnesses. Counsel and the court discussed the necessity of having a hearing on identity and agreed that the matter would be heard in January.

The Governor's Warrant was subsequently received, and on January 4, 1982, a hearing was held. The State presented the Governor's Warrant, to which were attached the extradition application of the county attorney for Coos County, New Hampshire, and affidavits of the investigating detective and Mary Ann Davis, a resident of Oxford County, Maine, which is just to the east of Coos County, New Hampshire. The latter affidavit identified defendant as the person shown in two photographs, which were attached. Also attached were certified copies of seven complaints charging Daniel L. Smith, alias Charles C. Stacy, of 116 South Rural, Emporia, Kansas, with uttering insufficient fund checks. Each complaint charges that the act was done "on or about December 23, 1980" or "on or about December 24, 1980." Also attached is a copy of a set of fingerprints of Dan L. Smith, a

requisition or request for extradition from the Governor of New Hampshire, and his order appointing an agent to take and receive from the State of Kansas Daniel L. Smith a/k/a Charles C. Stacy and to convey him to the State of New Hampshire.

At the January 4 hearing, the State's only evidence was the Governor's Warrant, together with the attachments noted above. Defendant testified in his own behalf and acknowledged that he was the person charged with writing bad checks in the State of New Hampshire. He also stated that in 1980 he resided in the State of Maine, near the town in New Hampshire where the checks were allegedly passed. He testified and introduced documentary evidence to prove that he left that area on December 20, 1980, flew to Kansas, remained in Emporia for several days, and returned to Maine on December 27, 1980. At the close of the hearing, the trial court ruled as follows:

"Upon hearing the testimony present, upon examining the exhibits that have been offered raising the serious question of Mr. Smith being in Kansas and in this area on this particular date that these allegations are, that the defendant was supposedly in New Hampshire, the notice when this—when an identity hearing was given, being in November and an adequate time between then and now for New Hampshire to provide satisfactory identification or evidence to that extent and since they have come forward with none, I think that the only thing the Court can do is to dismiss the action, refuse the Governor's Warrant based upon that question of identity, whether the defendant is the person that's charged with the crime in New Hampshire. Because of no evidence presented by the State of New Hampshire and/or by the State of Kansas, I will refuse the Governor's Warrant, then, based upon that."

The State first contends that the trial court erred in holding a hearing on the issue of identity, since the defendant failed to file a petition for a writ of habeas corpus as provided in K.S.A. 22-2710. That statute is a part of the Uniform Criminal Extradition Act, as enacted in Kansas. K.S.A. 22-2710 reads:

"**Rights of accused person; application for writ of habeas corpus; notice.** No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting attorney of the county in which the

arrest is made and in which the accused is in custody, and it shall be the duty of the prosecuting attorney to notify said agent of the demanding state."

At the defendant's initial hearing, he waived the formal reading of his rights and the complaint, and no mention was made of the provisions of K.S.A. 22-2710 in open court. Defendant did not formally file a petition for writ of habeas corpus. He announced, at the November hearing, that he desired a hearing on the question of identity, and his attorney stated that prior to the hearing he had notified the county attorney of the witnesses defendant would call for the identity hearing, and had disclosed the documents which he would offer in evidence. At the hearing on January 4, 1982, the identity hearing proceeded before the court without objection from the State. No mention was made of the need to file a petition for writ of habeas corpus. The State raises that issue for the first time on appeal. It contends that habeas corpus is the only way to challenge a warrant for extradition, and that the trial court erred in hearing evidence on identity in the proceeding before it. The defendant admits that the statute was not followed insofar as the filing of a petition for habeas corpus is concerned, but contends that the State had adequate notice of the proposed hearing, appeared and took part therein, and in effect waived any objection to the procedure.

Under the terms of the statute, it is clear that the appropriate and accepted method of attack is by application for writ of habeas corpus. Many courts have held that a hearing on the legality of the prisoner's detention can be had only when he or she has applied for a writ of habeas corpus. See *Osborne v. Van Cleave,* 166 Colo. 398, 443 P.2d 988 (1968); *Capra v. Miller,* 161 Colo. 448, 451, 422 P.2d 636 (1967); *Krutka v. Bryer,* 150 Colo. 293, 372 P.2d 83 (1962); *In re Kjeldsen,* 39 Misc. 2d 128, 240 N.Y.S.2d 71 (1963); and *Huddleston v. Costa,* 314 F. Supp. 278, 280 (W.D. Pa. 1970). We find no contrary authority; however, we have found no case factually similar to the one before us where both parties, without objection, proceeded with an "identity" hearing in the absence of an application for habeas corpus.

It is well established that ordinarily an appellate court will not consider an issue which has not been raised at trial, and upon which the trial judge has not had an opportunity to rule. *Boswell, Inc. d/b/a Reno County Adult Care Home v. Harkins,* 230 Kan. 610, Syl. ¶ 3, 640 P.2d 1202 (1982); *State v. Puckett,* 230 Kan. 596,

640 P.2d 1198 (1982); *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 (1974). Also, where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review. *Grimm v. Pallesen,* 215 Kan. 660, 527 P.2d 978 (1974). In the case before us, the county attorney did not institute the proceedings before the court insofar as the hearing on identity is concerned, but he consented to proceed without objection. The State was given ample advance notice that the hearing would be held, and had ample opportunity to—and did notify—New Hampshire authorities of the matter. Our statute, K.S.A. 22-2710, provides for an initial hearing for a person named in a Governor's Warrant before a court of record in this state. Certainly one of the issues which the legislature intended could be determined at that time was the identity of the accused as the person named in the warrant. Under the circumstances, we conclude that it was not prejudicial to the State for the trial court to proceed with the hearing on the issue of identity, and to resolve that issue. We will treat the issues as though an application for habeas corpus had been made, and had been granted by the trial court. We hasten to add that this ruling is based upon the peculiar facts of the proceeding before us; ordinarily, habeas corpus is the appropriate vehicle, and it should be pursued if the defendant desires to challenge the validity of his arrest.

The State contends that the trial court erred in receiving the defendant's evidence, since it went to alibi and not to identity. K.S.A. 22-2720 provides in substance that the question of guilt or innocence may not be inquired into during an extradition proceeding "except as it may be involved in identifying the person held as the person charged with the crime." In *King v. Hawes,* 224 Kan. 335, 336, 580 P.2d 1318 (1978), we said:

"To require and justify the rendition of an accused by the asylum state to the demanding state it must be shown that he is (1) the individual named in the writ of extradition; (2) charged, in accordance with statutory authority, with a crime in the demanding state; and (3) a fugitive, which is to say that the accused was in the demanding state when the alleged crime was committed."

As noted earlier, K.S.A. 22-2710 recognizes that a person arrested may challenge extradition through habeas corpus. Under the *King* case, the identity of the person charged and his presence in the demanding state when the alleged crime was committed are

issues which may be raised in such a proceeding. Clearly, the evidence introduced by the defendant, even though tending to establish alibi, was admissible. Most jurisdictions permit inquiry into identity and fugitivity in habeas corpus proceedings in the asylum state. See *Ross v. Hegstrom,* 157 Conn. 403, 254 A.2d 556 (1969); *Walton v. State,* 98 Idaho 442, 566 P.2d 765 (1977); *Bryson v. Warden, Balto. City Jail,* 287 Md. 467, 413 A.2d 554 (1980); and *State ex rel. Jones v. Gann,* 584 S.W.2d 235 (Tenn. Crim. App. 1979). In speaking of the limitations on the scope of the inquiry in courts of the asylum state in extradition proceedings, the United States Supreme Court in *Michigan v. Doran,* 439 U.S. 282, 289, 58 L.Ed.2d 521, 99 S.Ct. 530 (1978), said:

"A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Cf. *Bassing v. Cady,* 208 U.S. 386, 392 (1908). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable."

We conclude that the evidence was admissible and the trial court did not err in receiving it.

Finally, the State contends that the trial court erred in placing the burden of proof on the State and in denying the Governor's Warrant and dismissing the action on the record before it. In *King v. Hawes,* we said at 224 Kan. 337:

"Of course, when an accused challenges extradition in a habeas corpus proceeding brought under the Uniform Criminal Extradition Act, the governor's warrant issued in the extradition proceedings is presumed valid and regular in all respects, thus casting the burden of proof upon the petitioner to overcome the *prima facie* case made by the governor's warrant."

In the proceeding here, the Governor's Warrant established a prima facie case for the State. Defendant was then required to go forward with the evidence to overcome that showing. It is not clear upon the record before us that the trial court considered the Governor's Warrant and the documents attached thereto, which made a prima facie case for the State.

The person named in the warrant was positively identified as the person appearing in two photographs attached to the warrant. During his testimony, the defendant did not deny that he is the person shown in the photographs; he did not deny that he is also

known as Charles C. Stacy; he did not deny that he is the person whose fingerprints are attached to the Governor's Warrant; he did not deny that he is the Daniel Smith charged in the New Hampshire complaints. He contended only that he was not in the State of New Hampshire on the two dates mentioned in the complaints, December 23 and December 24, 1980. The defendant acknowledged that he was in the general vicinity four days before and four days after the specific dates alleged. The complaints clearly charge that the offenses occurred "on or about" the dates stated.

In Kansas, it is not necessary for the State to prove the exact date upon which an offense was committed, but it is sufficient if the State establishes that the offense charged was committed on or about the date alleged in the information, and within the statutory period of limitations next preceding the commencement of the prosecution. See *State v. Oswald,* 197 Kan. 251, 257, 417 P.2d 261 (1966); *State v. McKee,* 131 Kan. 263, 266, 291 Pac. 950 (1930); and *State v. Barnett,* 3 Kan. *250 (1865). A similar rule is applicable in the courts of New Hampshire. In *State v. Spade,* 118 N.H. 186, 189, 385 A.2d 115 (1978), the Supreme Court of that state said:

"We have long held that the State is not necessarily bound by a date specified in an indictment when time is not an element of the crime charged and proof that the event happened on the precise day named in the indictment is not required. *E.g., State v. Skillings,* 99 N.H. 427, 113 A.2d 490 (1955); *State v. Kennard,* 74 N.H. 76, 65 A. 376 (1906); *State v. Kelley,* 66 N.H. 577, 29 A. 843 (1891); *State v. Blaisdell,* 49 N.H. 81 (1869)."

This appears to be the general rule throughout the United States. See 42 C.J.S., Indictments and Informations § 257, and 41 Am. Jur. 2d, Indictments and Informations § 268.

The State made out a prima facie case, as we have observed, by presenting the Governor's Warrant. The defendant's evidence did not tend to prove that he was not the person named in the warrant; he admitted that *he* was the person charged. His evidence went only to his absence from New Hampshire on the specific dates mentioned in the complaints. This evidence by itself was not sufficient on the issues of identity or fugitivity to overcome the prima facie case made by the Governor's Warrant. Admittedly he was in the state or in an adjoining state a few miles distant, within the time frame: within four days.

We conclude that a prima facie case of identity being established, alibi was a defense not properly determinable in Kansas,

and that the trial court erred in refusing the Governor's Warrant and in dismissing the action.

The judgment is reversed and the cause is remanded to the trial court with directions to grant the extradition.

FROMME, J., not participating.