NOT DESIGNATED FOR PUBLICATION

No. 113,163

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

GRANT R. TUDERS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed March 11, 2016. Affirmed.

*Carl F.A. Maughan* and *Sean M.A. Hatfield*, of Maughan Law Group LC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*: Grant R. Tuders raises two issues in this direct appeal from his conviction by a jury of misdemeanor driving under the influence (DUI). He first argues that the trial court erred by not dismissing the case against him as a sanction for the State's failure to produce a dashcam video of the events leading up to his arrest. He also argues that the evidence was insufficient to support his conviction.

1

Finding no reversible error in the trial court's ruling regarding sanctions and further finding the evidence sufficient to support the jury verdict, we affirm the conviction and sentence.

*Factual and Procedural Background*

At 3:45 a.m. on February 23, 2013, Sedgwick County Sheriff's Deputy Joel Sutherland responded to a dispatch and found 62-year-old Tuders in the driver's seat of a pickup truck that had slid off the road at a large curve and come to rest in a snow-covered ditch. The roads were clear of any snow or debris, but it was extremely cold. Sutherland asked Tuders if he was injured and needed medical attention. A vulgar Tuders responded that he was fine and told Sutherland to go away. During his ensuing conversations with Tuders, Sutherland observed several indicators that Tuders might be under the influence of alcohol, including: a strong odor of alcohol coming from his person; slurred speech; bloodshot, watery eyes; ongoing vulgar and aggressive behaviors; and instability on his feet. Sutherland asked whether Tuders had been drinking. Tuders responded that he had been drinking beer at the casino "prior to driving, but he was not currently drinking."

Shortly thereafter, Deputies Eric Slay and Andrew Dodge arrived at the scene to take over the DUI investigation. Still agitated, Tuders also admitted to Slay that he had been drinking that night and that he had slid off the road on his way back from the casino. During their investigation, both Slay and Dodge noticed the same indicators of intoxication Sutherland had noticed. As a result, Deputy Dodge repeatedly asked Tuders to submit to standardized field sobriety tests. Tuders eventually agreed to take the tests but constantly interrupted and talked over Dodge as he explained the instructions. Once he finally performed the walk-and-turn test, Tuders exhibited six out of the eight known clues of intoxication, which led Dodge to opine that Tuders was not capable of safely operating a vehicle. Dodge eventually abandoned his attempts to explain the one-leg stand test since Tuders continued to talk over and ignore Dodge's instructions and grew

2

more belligerent and antagonistic. Dodge then arrested Tuders for DUI. At that point, Dodge noticed Tuders had apparently urinated on himself. Inability to control bodily functions is another indicator of intoxication. Tuders' belligerence continued as Dodge and Slay drove him to the jail. He even flipped Dodge off as he pulled over and tried to adjust Tuders' handcuffs to ease his complaints they were too tight.

Once at the police station, a still-argumentative Tuders submitted to a breath test. Due to the manner in which Tuders was blowing into the Intoxilyzer 8000 breath test machine, he never gave a sufficient volume of breath to complete the test. While this rendered the samples deficient, it did not necessarily affect their accuracy or reliability. During the first test, Tuders never blew long enough for the machine to register a value, *i.e.*, the machine read .00. During the second test, however, he blew enough for the machine to read a breath alcohol content of .109. Consequently, Slay also opined that Tuders was incapable of safely operating a vehicle.

Based on this investigation, the State ultimately asked a jury to convict Tuders of misdemeanor DUI and driving at a speed too fast for the road conditions. During the 4-day jury trial, Tuders extensively cross-examined the State's witnesses regarding the evidence outlined above. In his own defense, he also presented the testimony of a friend, who said he played chess that night with Tuders into the early morning hours and had not seen Tuders drink for a long time. Tuders also testified that when he arrived at the casino early that morning before his accident, they had already stopped serving alcohol.

The six-member jury found Tuders guilty of DUI and not guilty of driving at a speed too fast for the road conditions. The trial court subsequently sentenced Tuders to 1 year in jail and a fine of $1,250. The court then placed Tuders on probation for 12 months, ordering him to serve 178 of those days on house arrest after he served 48 hours in jail.

*Invited Error Precludes Tuders' Challenge to the Trial Court's Discovery Sanction*

In his first issue on appeal, Tuders complains the trial court should have dismissed the prosecution against him as a sanction for the State's failure to preserve a dashcam video recording of the events at the scene of his accident. The State suggests that we need not reach the merits of Tuders' complaints because he invited any error by specifically requesting the discovery sanction imposed by the trial court.

The State's obligation to disclose information during discovery is governed in part by K.S.A. 2015 Supp. 22-3212. See *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). When an issue arises concerning the State's failure to comply with its obligations, the statute provides: "[T]he court may order [the State] to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, *or it may enter such other order as it deems just under the circumstances*." (Emphasis added.) K.S.A. 2015 Supp. 22-3212(i). Accordingly, an appellate court reviews a trial court discovery order, including an order granting or refusing to grant sanctions, using an abuse of discretion standard. See *State v. Johnson,* 297 Kan. 210, 215-16, 301 P.3d 287 (2013) (the court noted: "The draconian remedy of dismissal for a discovery violation is obviously a matter of judicial discretion. See *Canaan v. Bartee,* 272 Kan. 720, Syl. ¶ 3, 35 P.3d 841 [2001] [where noncompliance with discovery order is due to inability rather than bad faith, severe sanction of dismissal or default probably inappropriate].").

This issue arose in this case because, as the trial court ultimately found, there were two video recordings, only one of which the prosecutor provided to Tuders prior to trial. The prosecutor had requested the Sheriff's Office to provide all videos tied to Tuders' case. The Sheriff's Office responded by providing the State a videotape of the administration of Tuders' Intoxilyzer breath test conducted at the police station following his arrest for DUI. The State produced that video to Tuders. After the jury had been

4

sworn in but before opening statements, Tuders questioned whether there might also be a dashcam video recording from the scene of Tuders' arrest. The issue came up as the deputies viewed the Intoxilyzer video in counsel's presence. At Tuders' request, the trial court dismissed the jury early for the day and allowed Tuders to call several witnesses from the Sheriff's Office to determine if there was another video, and, if so, what happened to it. Some of those witnesses were unsure whether a second video existed. Others suggested that based on their usual procedures, a video would have been recorded by the dashcam of the arresting Deputy's patrol vehicle. However, for unknown reasons no such video could be found in the systems on which such videos are usually stored. One of the State's witnesses—who described himself as the "go-to guy" for the system on which such videos are now stored for the Sheriff's Office—testified that his "best guess" for why only Tuders' Intoxilyzer video was found on the system for the date in question was that videos were lost during a transfer of data from one server to another.

Tuders had initially mentioned in passing an intent to move to dismiss if there was a discovery violation, but at the close of the hearing, he instead requested the court suppress the Intoxilyzer video as a sanction to place him on "equal footing" with the State. Although Tuders voiced concerns regarding the Sheriff Office's video recording and storage systems, he acknowledged that he would not be able to prove the bad faith necessary to justify the court's discretionary dismissal of the case.

The trial court noted Tuders' concession that there was no bad faith but found the situation to be "fundamentally unfair" and "violative of due process." Thus, over the objection of the State, the district court granted Tuders' request to suppress the Intoxilyzer video and ordered that the videos could not be mentioned during the trial.

Despite acknowledging in his brief that he got the relief which he requested from the trial court, Tuders now urges this court to find that the trial court erred in failing to

5

dismiss the case. In response, the State suggests that the doctrine of invited error should preclude our consideration of Tuders' new claim.

The doctrine of invited error generally precludes a litigant from affirmatively asking a trial judge to rule in a particular manner and then seeking reversal of an adverse judgment based on that particular ruling. The rule is succinctly set forth in *State v. Smith,* 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982): "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review." See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014); *State v. Schreiner*, 46 Kan. App. 2d 778, 788, 264 P.3d 1033 (2011), *rev. denied* 296 Kan. 1135 (2013).

Here, as the State suggests, Tuders made a conscious strategic trial decision in asking the trial court to sanction the State for failure to retain and produce the dashcam video by suppressing the subsequent Intoxilyzer video. Given the wide discretion accorded to the trial court in fashioning an appropriate sanction, suppression was a reasonable alternative available to remedy the situation. Although Tuders later expressed regret at having had the Intoxilyzer video suppressed, therefore precluding him from using it to cross-examine the State's witnesses, this acknowledgment further reinforces the contention that he had sought the court's ruling as part of a conscious trial strategy, albeit one which backfired to some extent.

This situation presents a proper platform for application of the invited error doctrine. Since Tuders did, indeed, specifically request and "invite" the court's suppression ruling, thereby receiving the very discovery sanction he requested, he cannot now complain that the trial court's failure to dismiss the prosecution was error. The judgment of the trial court is affirmed.

*The Evidence Was Sufficient to Support Tuders' Conviction*

Tuders also somewhat briefly and summarily challenges the sufficiency of the evidence to sustain his conviction. In reviewing the sufficiency of the evidence to sustain a criminal conviction, this court determines whether all the evidence, viewed in a light most favorable to the prosecution, was sufficient for a rational factfinder to have found the defendant guilty beyond a reasonable doubt; this court cannot reweigh the evidence or asses credibility. See *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

Tuders first complains that some of the indicators of his intoxication cited by the deputies were "suspect." In particular, Tuders contends his bloodshot, watery eyes could be explained by the bitter cold weather that morning. He also states that his false teeth were known to cause slurred speech. But these matters went solely to the weight to be afforded the evidence. Jurors, not appellate courts, weigh the evidence. See *State v. Drayton*, 285 Kan. 689, 710, 175 P.3d 861 (2008) (citing *State v. Gibson*, 246 Kan. 298, 303, 787 P.2d 1176 [1990] ["It is the jury's prerogative to determine the weight to be given the evidence and the reasonable inferences to be drawn from the evidence."]). The jury was instructed that in order to convict Tuders of DUI, it had to find he was "under the influence of alcohol to a degree that render[ed him] incapable of safely driving a vehicle." See K.S.A. 2015 Supp. 8-1567(a)(3). Tuders' brief argument on appeal concerning these two indicators of intoxication disregards the abundance of other evidence of his intoxication. As the trial court pointed out in denying Tuders' motion for acquittal, that evidence included the strong odor of alcohol on his person, his agitation, his admission he had been drinking, and his unsteadiness as he exited and then stood outside of his pickup. Tuders also failed the field sobriety test that he completed, he remained argumentative and profane throughout, and he apparently urinated on himself during the course of the investigation.

Tuders further complains that a reasonable factfinder could not conclude from the two deficient breath samples that Tuders was driving with a blood alcohol content (BAC) above the legal limit. Again, the State was not obligated to prove Tuders had a BAC of .08 or above for the jury to find Tuders guilty of DUI. Granted, the trial court did instruct the jury it "may consider" breath test results of .08 or more "in determining whether the defendant was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle." However, that same instruction cautioned:

> "The test result is not conclusive, but it should be considered by you along with all other evidence in this case.
> "You are further instructed that evidence derived from a breath test does not reduce the weight of any other evidence on the question of whether the defendant was under the influence of alcohol."

The State clearly presented sufficient evidence from which the jury could conclude beyond a reasonable doubt that Tuders was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle.

Affirmed.

8