NOT DESIGNATED FOR PUBLICATION

No. 115,008

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMOND LEROY BRADFORD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed December 23, 2016. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Barry K. Disney*, assistant county attorney, *Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON and ARNOLD-BURGER, JJ.

*Per Curiam*:  Defendant Raymond Leroy Bradford contends the verdicts of a jury sitting in Riley County District Court convicting him of two counts of aggravated battery, one count of criminal restraint, and one count of criminal damage to property were impermissibly tainted because the jury instruction on the State's burden of proof and reasonable doubt deprived him of a constitutionally fair trial by chilling possible juror nullification. He also challenges the aggravated battery verdicts as infirm ostensibly because the statute defining the crime is too vague. Neither contention warrants relief. We, therefore, affirm the verdicts and Bradford's final judgment of conviction.

1

Given the nature of the issues Bradford has raised on appeal, we need not recount his underlying conduct in detail. Bradford's convictions arose from a series of violent episodes on March 13, 2015, at the home he shared with his girlfriend Elizabeth Welter and Welter's 14-year-old daughter. Jennifer Vandermark was also staying at the house temporarily. Bradford was convicted of the aggravated battery of Vandermark and of Welter's daughter for having inflicted bodily harm on the victims in a way that could have resulted in great bodily harm, disfigurement, or death. The crimes are severity level 7 person felony violations of K.S.A. 2015 Supp. 21-5413(b)(1)(B). Bradford was also convicted of criminal restraint of Welter, a misdemeanor violation of K.S.A. 2015 Supp. 21-5411, and criminal damage to property, a misdemeanor violation of K.S.A. 2015 Supp. 21-5813. The district court imposed a controlling 32-month term of imprisonment on Bradford, followed by postrelease supervision.

For his first issue on appeal, Bradford contends the section of the aggravated battery statute under which he was convicted is unconstitutionally vague and, therefore, left the jurors to speculate—impermissibly—as to whether the State had proved the crime. As we just indicated, K.S.A. 2015 Supp. 21-5413(b)(1)(B) criminalizes "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted." Bradford argues that the terms "great bodily harm" and "can be inflicted" are sufficiently vague separately and taken together to render the statute unconstitutional.

A governmental entity must provide "fair notice" of conduct it has criminalized and for which transgressors may be deprived of their liberty. See *FCC v. Fox Television Stations, Inc.*, 567 U.S. ___, 132 S. Ct. 2307, 2317, 183 L. Ed. 2d 234 (2012) ("A fundamental principle of our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). The Due Process

Clause of the Fourteenth Amendment to the United States Constitution imposes a duty of fair notice and, therefore, binds state governments. See *Papachristou*, 405 U.S. at 163; *Cole v. Arkansas*, 333 U.S. 196, 201-02, 68 S. Ct. 514, 92 L. Ed. 644 (1948). If a reasonable person must guess as to what a criminal statute prohibits, the statutory language is too vague to provide constitutionally adequate notice. *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939) (A criminal statute is "repugnant" to due process requirements if it fails to "inform[] as to what the State commands or forbids," and, thus, offends "ordinary notions of fair play . . . .").

But Bradford misframes his argument by attacking the jurors' verdicts based on the purported vagueness of the statutory language defining aggravated battery rather than on the jury instructions explaining the elements of the crime. The jurors necessarily relied on the relevant instructions rather than the statute in arriving at their guilty verdicts. The statute itself would have been the appropriate target had Bradford claimed the language defining aggravated battery in K.S.A. 2015 Supp. 21-5413(b)(1)(B) were so amorphous that he, as a reasonable person, would not have recognized that what he did violated the law. See *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). That, however, is not Bradford's argument. Because he contends the jurors were misled about the nature of the crime, we must turn to the jury instructions to assess his claim.

In this case, the district court used PIK Crim. 4th 54.310 and gave a separate elements instruction for each aggravated battery count that differed only as to the name of the alleged victim. Pertinent here, the language of the instructions parallels the terminology in K.S.A. 2015 Supp. 21-5413(b)(1)(B) that Bradford attacks on appeal. But Bradford's trial lawyer asked the district court to use instructions containing the terms he now challenges as erroneous. Those contradictory positions generate a substantial legal problem for Bradford. The request at trial followed by the complaint on direct appeal creates an invited error that effectively bars our review.

3

Typically, parties cannot complain on appeal about jury instructions a district court has given at their request. That is a classic form of invited error. *State v. Bailey*, 292 Kan. 449, 459, 255 P.3d 19 (2011) ("When defendant's requested instruction is given to the jury, the defendant cannot complain the requested instruction was error on appeal."); *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 (2008) (defendant bound to deliberate bypass of instructions on lesser included offenses). More broadly stated, a party may not invite or prompt error in a case and then complain of that error as a ground for reversing an adverse judgment. *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011). The Kansas Supreme Court has succinctly stated the invited error doctrine this way: "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review." *State v. Smith*, 232 Kan. 128, Syl. ¶ 2, 652 P.2d 703 (1982).

Under the circumstances presented here, the invited error rule would apply to even a constitutional defect in the language of a jury instruction the defendant has requested through his or her lawyer. See *State v. Hargrove*, 48 Kan. App. 2d 522, 551-54, 293 P.3d 787 (2013) (The invited error rule may be relaxed to address a negligent mistake in requesting a jury instruction compromising a criminal defendant's constitutionally protected right, but negligence rather than a tactical decision will not be presumed from silent record, thereby precluding review on direct appeal in deference to consideration in a habeas corpus proceeding under K.S.A. 60-1507.). Bradford can't evade that barrier by shifting his attack to the statute. We find invited error disposes of the point.

Moreover, Bradford's argument fails on the merits. The terms "great bodily harm" and "can be inflicted" are not constitutionally vague, whether in the context of the aggravated battery statute or the pattern jury instruction the district court used here. The Kansas appellate courts have consistently recognized the existence of "great bodily harm" to be a question of fact for the jurors to determine from the specific circumstances of a

given case. The term is susceptible to a common meaning reasonably understood from those words. *State v. Sanders*, 223 Kan. 550, 552, 575 P.2d 533 (1978); see *In re J.A.B.*, 31 Kan. App. 2d 1017, 1023-24, 77 P.3d 156 (2003); *State v. Walker*, No. 107,878, 2013 WL 3970180, at *5-6 (Kan. App. 2013) (unpublished opinion). Likewise, the phrase "can be inflicted" has been regularly held sufficiently definite to avoid unconstitutional vagueness. *State v. Kleber*, 2 Kan. App. 2d 115, 118, 575 P.2d 900 (1978); *State v. Wade*, No. 112,121 2015 WL 5458557, at *4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. 1022 (2016); *State v. Landwehr*, No. 107,273, 2013 WL 2917879, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1206 (2013). We see no reason to depart from that authority. We are likewise unpersuaded by Bradford's suggestion that the terms together catalyze into some supercharged constitutional perplexity when neither alone is impermissibly indefinite or uncertain.

Bradford attempts to prop up his argument by analogizing those aspects of the aggravated battery statute to the residual provision of the federal Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B) (2012), that the United States Supreme Court held to be unconstitutionally vague in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 2563, 192 L. Ed. 2d 569 (2015). The analogy is inapt, as *Johnson* recognizes. The Act permits federal district courts to enhance the punishment for criminal defendants convicted of firearms offenses if they have been previously convicted of "violent felony" defined, in part, to include "any crime . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). To determine if a past conviction falls within that residual clause, the sentencing court assesses the potential risk posed by tying that assessment "to a judicially imagined 'ordinary case' of [the] crime, not to real-world facts or statutory elements." 135 S. Ct. at 2557. But the abstraction of a hypothetical "ordinary" crime injects too much play into the process, leading to arbitrary results dependent upon the sentencing court's conception of that crime. Because the Act's residual clause fails to provide more concrete guidance, that part of the statute is unconstitutionally vague. 135 S. Ct. at 2558.

5

Here, the jurors were not asked to engage that sort of hypothetical assessment. The jurors compared the facts specific to Bradford's conduct—gleaned from their evaluation of the trial evidence—to the elements of the aggravated battery charges outlined in the jury instructions. The jurors' deliberative process entails a constitutionally acceptable counterpoint the Court chose to illustrate the contrasting failure of the Act. 135 S. Ct. at 2558 ("It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction.").

In short, Bradford's constitutional vagueness challenge to his aggravated battery convictions fails.

For his second issue, Bradford contends the jury instruction outlining the State's burden of proof and advising the jurors that "[i]f you have no reasonable doubt as to the truth of each of the claims required to be proved by State, you should find the defendant guilty," deprived him of a constitutionally fair trial and vitiates all of the verdicts. He says use of the word "should" imposes an impermissible directive on the jurors to convict and, therefore, improperly impedes jury nullification. The challenge misfires for multiple reasons.

For openers, Bradford's trial lawyer also requested the burden-of-proof instruction the district court gave the jury. The instruction matches PIK Crim. 4th 51.010. So, as we explained in addressing Bradford's first issue, the prohibition on appellate review of invited errors undoes Bradford's complaint about the reasonable-doubt instruction.

Bradford attempts to sidestep the bar of invited error by characterizing the instruction as a structural error necessarily undermining the reliability of the jury's verdicts. We disagree. Jury instructions that dilute the State's burden to prove a defendant guilty beyond a reasonable doubt create a structural error. *Sullivan v. Louisiana*, 508 U.S.

6

275, 280-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993); *State v. Miller*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014). Because of the nature of the error, a reviewing court cannot reliably determine what verdict a properly instructed jury might have returned; so by dismissing such an error as harmless, the reviewing court effectively—and impermissibly—substitutes its assessment of the evidence for that of the jurors, resulting in what amounts to a directed verdict of guilty in violation of the defendant's constitutional right to trial by jury. *Sullivan*, 508 U.S. at 277, 281-82. A structural error lessening the burden of proof, therefore, requires reversal of a criminal conviction.

The purported error here, however, is materially different. The jurors were properly informed of the State's burden to prove the elements of the charged crimes beyond a reasonable doubt. And we presume the jurors followed that direction. *Miller*, 298 Kan. at 937. Accordingly, we have no reason to question whether the jurors, sitting as factfinders, were convinced beyond a reasonable doubt of Bradford's guilt on each of the charges. That means there was no structural error of the type recognized in *Sullivan* and *Miller*. Rather, the purported error bears on what the jurors should then report on the verdict forms based on their determination of guilt beyond a reasonable doubt. Even assuming the language of the instruction gave the jurors too unyielding a command to enter guilty verdicts based on their factual determination the State had satisfied its burden of proof, the error would not call into question the factual determination itself. The purported error, therefore, is not structural and can be subject to the invited error doctrine. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014) ("[T]he invited error doctrine is inapplicable when a constitutional error is structural.").

Apart from any invited error, Bradford's argument fails because the instruction correctly informed the jurors they "*should* find the defendant guilty" if they had no reasonable doubt as to each of the elements the State had to prove. (Emphasis added.) Bradford contends the word "should" conveys a mandatory directive inconsistent with jury nullification and, therefore, amounts to error. Multiple panels of this court have

7

already rejected that argument and with good reason. See, *e.g.*, *State v. Campbell*, No. 114,167, 2016 WL 3407598, at \*3-4 (Kan. App. 2016) (unpublished opinion) (collecting cases); *State v. Hastings*, No. 112,222, 2016 WL 852857, at \*3-5 (Kan. App. 2016) (unpublished opinion); *State v. Jones*, No. 111,386, 2015 WL 4716235, at \*6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2016). We join them.

Bradford premises his position on *State v. Smith-Parker*, 301 Kan. 132, 163-64, 340 P.3d 485 (2014), in which the court indicated that an instruction telling jurors they "must" find the defendant guilty if a crime has been proved beyond a reasonable doubt impermissibly encroaches on the power of jury nullification. The court considered the jury instruction along with other trial irregularities and reversed Smith-Parker's convictions based on cumulative error. 301 Kan. at 168. The court, however, voiced no concern about Smith-Parker's proposed alternative instruction substituting "should" for "must," thus matching the instruction used here. 301 Kan. at 163-64. As a result, *Smith-Parker* is, at best, oblique authority for Bradford's position.

Looking at the issue more generally, the word "should" conveys a conditional obligation rather than a categorical one. Merriam-Webster's Collegiate Dictionary 1082 (10th ed. 2001) ("should" defined as expressing "obligation, propriety, or expediency," sense 2; defined as expressing "what is probable or expected," sense 4). That is, if someone "should" do something, they ought to but need not. By contrast, "must" reflects "compelled" action or conduct. Merriam-Webster's Collegiate Dictionary 766 (10th ed. 2001) (defining "must"). In explaining a jury's duty, the word "should" imports nothing amiss or improper. Jurors in a criminal case have a duty to bring back a guilty verdict if they are convinced beyond a reasonable doubt the defendant committed the charged crime. See *State v. Stinson*, No. 112,655, 2016 WL 3031216, at \*3 (Kan. App. 2016) (unpublished opinion) (Atcheson, J., concurring); *State v. Cash*, No. 111,876, 2015 WL 5009649, at \*4 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1079 (2016). Those jurors are typically sworn "to try the case conscientiously and [to] return a

verdict according to the law and the evidence," as are civil jurors. K.S.A. 2015 Supp. 60-247(d); *Cash*, 2015 WL 5009649, at *4. Nevertheless, jurors in criminal cases have the unchecked power to acquit a defendant in complete disregard of the applicable legal principles, the evidence, or both, thereby allowing an obviously guilty person to walk free. A jury's exercise of its collective power of nullification necessarily shreds its duty to follow the law, to fairly find the facts, and to render a "true" verdict.

While permitting nullification in criminal cases, the judicial process deliberately offers virtually no acknowledgment of or accommodation to nullification. *Stinson*, 2016 WL 3031216, at *3 (Atcheson, J., concurring) ("One of the paradoxes of jury nullification lies in the silence that shrouds it."). Lawyers may not speak of that power in the presence of the jurors, and district courts do not inform jurors about it. See *State v. McClanahan*, 212 Kan. 208, 215-16, 510 P.2d 153 (1973) (no jury instruction should be given on nullification); *State v. Chambers*, No. 111,390 2015 WL 967595, at *8-9 (Kan. App. 2015) (unpublished opinion), *rev. denied* September 14, 2015 (district court properly precluded defense counsel from arguing for jury nullification). The use of the word "should" in the jury instruction on reasonable doubt conforms to those rules. The instruction the district court gave affords ample allowance for jury nullification—an unbridled authority that is itself antithetical to the objectives of the judicial process.

Bradford's attack on the reasonable doubt instruction then fails as invited error and more fundamentally because the ostensible flaw he identifies is not, in fact, error at all.

Having examined the two points Bradford has raised on appeal, we find nothing undermining his convictions.

Affirmed.