NOT DESIGNATED FOR PUBLICATION

No. 117,420

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ARTHUR BRIAN CORDES,
*Appellee*.


MEMORANDUM OPINION

Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed April 6, 2018.
Affirmed.

*Stephen P. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Steve A. Stockard*, of Wilbert & Towner, P.A., of Pittsburg, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and BRUNS, JJ.


PER CURIAM: Ultimately this case requires us to determine whether the district court abused its discretion in declaring a mistrial after the defendant, Arthur Brian Cordes, was convicted of aggravated indecent liberties with a child. However, the path to that decision is arduous. Cordes was charged in 2014 with sexually abusing his minor stepdaughter from 2003 to 2010. Some of the time period that Cordes was alleged to have committed the crimes was within the statute of limitations, while other times were outside the statute of limitations.

1

Several weeks after the jury returned a guilty verdict, the district court declared a mistrial. The court determined that the statute of limitations should have prevented the admission of some of the evidence and, moreover, allowing the State to present evidence that was time barred was prejudicial to Cordes.

The State appeals from the court's declaration of a mistrial. The State argues that a mistrial was not required because none of the events were time barred and therefore all of the evidence was appropriately before the jury. The State also argues that declaring a mistrial was an inappropriate remedy.

Because we find that the State was unable to meet its burden of proving that all of the events occurred within the statute of limitations, the district court was correct in finding that some of the evidence was time barred. Additionally, because the district court did not base its decision on an error of law or fact, and the decision made was reasonable, the court did not abuse its discretion in granting Cordes a new trial.

FACTUAL AND PROCEDURAL HISTORY

In 2014, the State filed a two-count complaint against Cordes charging him with rape and aggravated indecent liberties with a child, both occurring between September 1, 2002, and October 1, 2008. Cordes filed a bill of particulars requesting a more specific date the alleged events were said to have occurred, rather than a 6-year time frame. In response, the State filed an amended complaint which alleged that the rape occurred between January 1, 2004, and December 31, 2005. The amended complaint also alleged that the events leading to the aggravated indecent liberties with a child charge occurred between January 1, 2004, and December 31, 2010.

2

After the preliminary hearing, Cordes filed a motion to dismiss arguing, in part, that the statute of limitations had run for the alleged rape. The court ultimately denied the motion.

A jury trial was held where Cordes renewed his motion to dismiss because, in part, a large portion of the dates the alleged rape took place were barred by the statute of limitations. Cordes further argued that if the district court dismissed the charge of rape, allowing testimony regarding the rape would be impermissible prior bad acts evidence under K.S.A. 60-455.

At trial P.G, testified that in early 2004 her stepfather, Cordes, would give her baths and would put his finger in her vagina. We will refer to these as the bathtub events. P.G. testified that this happened two or three times. She further testified that the bathtub events only occurred at the house on Merchant Street. P.G. testified that she lived at the Merchant Street residence in first grade. P.G. was in first grade in 2003 and 2004. She also testified on cross-examination that the bathtub events would have occurred sometime between January and June of 2004.

P.G. and her family lived on Merchant Street for a little over a year before moving to a house on Wisconsin Street. P.G. testified that at the Wisconsin Street residence, Cordes would have P.G. lay down in the hallway while he would lay on top of her and rub up and down. P.G. further testified that the hallway events occurred two or three times a week while Cordes was home. P.G. also testified that later at the Wisconsin Street residence, Cordes would approach P.G.'s bed while she was sleeping, take her hand, and have her rub his penis. She said that this happened two or three times. She further testified that the last time this occurred was while she was in sixth grade. P.G. indicated that sometime after Christmas in late 2008 or in early 2009 Cordes had P.G. touch his penis, and when she rolled away he whispered "goodnight" and "I love you." These will

3

be referred to as the bedroom events. P.G. testified that Cordes did not molest her after her family moved to Oklahoma in 2009.

After the State rested, Cordes moved for a directed verdict which was denied. Cordes also renewed his motion to dismiss based on the statute of limitations. The district court judge seemed amenable to the argument, but he decided to wait for a verdict rather than dismissing the rape charge. The court and Cordes' counsel discussed the possibility of a mistrial due to the presentation of the rape evidence. During the jury instruction conference the proposed jury instructions were presented to the parties. There was no mention of a special instruction informing the jury that to find Cordes guilty the event must have occurred after a specified date. Neither party requested additional instructions.

The jurors were given a unanimity instruction, advising them that they must be unanimous on the act that supported the charge, but they were not told that the act must be within a certain timeframe. The instructions for both offenses included a beginning date of January 2004. In closing, the State referred to the bathtub event stating: "[I]t started with the bath events. . . . [P.G.] testified that Mr. Cordes had penetrated her vagina with his finger." The State also said, "[D]id we prove beyond a reasonable doubt that Mr. Cordes penetrated his stepdaughter's vagina with [his] finger while she was taking a bath." With regards to the aggravated indecent liberties charge the State referenced one particular event stating "*one* date we know that it was sometime after Christmas in 2008, and in the spring of—and between the spring of 2009." (Emphasis added.) Cordes' attorney presented a general denial of the charges in his closing argument.

The jury found Cordes was not guilty of rape and guilty of aggravated indecent liberties with a child. Cordes also moved for mistrial arguing that because the rape allegations were likely barred by the statute of limitations, the rape evidence was admitted in violation of K.S.A. 60-455. He subsequently filed a motion for arrest of

judgment, motion for acquittal notwithstanding the verdict, and motion to dismiss with prejudice.

After some thought, a few weeks after the verdict, the district court declared a mistrial. The court stated:

> "I should have sustained the defendant's motion to dismiss the rape charge at the close of the State's evidence, if not sooner, but once the jury had heard that evidence of alleged rape, I should have declared a mistrial and had you come back for trial on the [aggravated] indecent liberties.
> "Next I should have instructed differently. I should have given the jury special questions to pin down whether or not they thought the act occurred before or after the statute of limitations would have barred it. And if the State is going to insist upon tolling, I should have instructed the jury. . . ."

The court set a status conference to give the parties time to determine the proper course of action based on its ruling.

The district court judge subsequently adopted his prior rulings declaring a mistrial and further found that it was prejudicial to Cordes to allow the jury to hear evidence of rape and evidence of acts of indecent liberties which should not have been charged because they were outside the statute of limitations. The court also ruled that the statute of limitations was not tolled due to Cordes being out of the state on indeterminate dates.

This court accepted the State's interlocutory appeal of the district court's decision.

5

*The district court did not err in calculating the statute of limitations for the facts supporting the rape charge.*

It should be noted that the State acknowledges that Cordes was tried and acquitted on the rape charge. The State does not seek to retry Cordes on the rape charge. Instead, the State argues that the district court's declaration of a mistrial was based on what the State characterizes as an improperly calculated statute of limitations regarding the facts that gave rise to the rape charge. Therefore, we will begin with a discussion of the calculation of the statute of limitations on the rape charge.

*Standard of Review*

Appellate review of whether the statute of limitations bars prosecution is subject to unlimited review. *State v. Meza*, 38 Kan. App. 2d 245, 247, 165 P.3d 298 (2007). Findings of fact by the district court involving the statute of limitations are reviewed for substantial competent evidence. See *State v. Haskins*, 262 Kan. 728, 731, 942 P.2d 16 (1997) (appellate court reviews findings of fact for substantial competent evidence). Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

*The statute of limitations for the events giving rise to the rape charge expired in 2009, before these charges were filed.*

Generally, "statutes of limitation are favored by the law and are to be construed liberally in favor of the accused and against the prosecution." *State v. Bentley*, 239 Kan. 334, 336, 721 P.2d 227 (1986). Although the State need not prove the exact date an

offense occurred, the State must show that an offense charged was committed within the statute of limitations. *State v. Smith*, 232 Kan. 128, 134, 652 P.2d 703 (1982).

Before we address the actual dates of the alleged offenses, an overarching issue presents itself in this case—which statute of limitations applies? The statute of limitations for rape was extended after all of these incidents occurred. At the time of these offenses, the statute of limitations for rape was five years. K.S.A. 2003 Supp. 21-3106(4). The time could be tolled under certain circumstances including when the accused is absent from the state. K.S.A. 2003 Supp. 21-3106(9)(a). The statute of limitations for rape was replaced with an unlimited statute of limitations for rape on July 1, 2013. L. 2013, ch. 5, § 1; see K.S.A. 2017 Supp. 21-5107(a).

A newly adopted statute of limitations which increases the time in which a prosecution can be initiated can only be applied to someone who could still be prosecuted under the original statute of limitations at the time the new law was effective. *State v. Garcia*, 285 Kan. 1, 7-8, 169 P.3d 1069 (2007). In this case, the extended statute of limitations could only be applied if the case was not time barred on or before July 1, 2013. See 285 Kan. at 7-8.

According to the testimony provided, the alleged rape occurred in 2003 or 2004. Based solely on the date of the alleged rape and the date the charges were filed, April 3, 2014, it is clear that the statute of limitations had expired on the rape charge. K.S.A. 2003 Supp. 21-3106(4). The State agrees, but argues that the statute of limitations was tolled based on Cordes' absence from the state.

*The district court did not err in finding that the statute of limitations was not tolled for the period of time Cordes was residing in Kansas.*

The State argues that K.S.A. 2003 Supp. 21-3106(9)(a) applies to toll the statute of limitations. That statue provided that the statute of limitations is tolled for periods of time where "[t]he accused is absent from the state." K.S.A. 2003 Supp. 21-3106(9)(a). The State argues that evidence at trial indicated that Cordes was out of Kansas for "months on end" and "long periods of time." In response, Cordes argues that there was no evidence of specific dates that Cordes was out of Kansas and the State's argument "is mere conjecture and guesswork."

At trial, there was some evidence that Cordes was absent from the home for periods of time. An exchange between the prosecutor and P.G. went as follows:

"Q. Now, while you were in Oswego, to the best of your knowledge, did Mr. Cordes work?

"A. Yes.

"Q. Was this a full-time job?

"A. Sometimes.

"Q. Okay. Describe his job for me.

"A. He would be gone sometimes for weeks at a time or months at a time. Sometimes he would be home for weeks at a time or months at a time and then there was a time where he worked in Parsons full time so he was home every day.

"Q. So he didn't have a standard work schedule the whole six years you were there?

"A. Minus the time I [sic] worked in Parsons, yeah.

"Q. What was the standard, he was gone large portions of the time and home portions of the time?

"A. Yes."

On cross-examination, Cordes' attorney addressed Cordes' schedule with P.G. He asked if Cordes worked out of town and P.G. responded that he worked out of town, and

8

out of Kansas, for significant periods of time. However, in context, Cordes' attorney appears to be focusing on the bedroom events that occurred in 2008 or early 2009, and not on the bathtub events in 2003 and 2004 which would have supported the rape charges. Additionally, no specific dates were given.

The court found that the fact that Cordes was out of Kansas at various times did not toll the statute of limitations. We pause to note that there was clear evidence that after the school year ended in 2009 the family moved to Oklahoma and Cordes was out of the state from that point forward. The court also stated that it found the statute of limitations did toll when Cordes moved to Oklahoma in 2009. But the facts giving rise to the rape all occurred before the 2009 move to Oklahoma while Cordes resided in Kansas, but during which time he periodically left for some location, either in or out of the state, for undefined periods.

Kansas courts have addressed the statute of limitations tolling when the accused is out of the state in several cases. In *State v. Hill*, 145 Kan. 19, 23, 64 P.2d 71 (1937), the Kansas Supreme Court held that while the evidence did not show an exact number of times the accused was out of Kansas, it was "abundantly shown" that he ordinarily was in Oklahoma. The court noted that his ordinary business activities were done in Oklahoma and that he was usually found in Oklahoma. The court found that it was a "fair inference to be deduced from the mass of persuasive facts in evidence that he had been outside the State of Kansas" for a period of time that meant the statute of limitations had not run. 145 Kan. at 23.

Other cases addressing the issue have reported periods of absence by use of concrete dates. See *State v. Robbins*, 272 Kan. 158, 163, 32 P.3d 171 (2001) (noting that Robbins was out of Kansas for all but, at most a month and a half, out of a total of nearly six and a half years), *abrogated on other grounds by State v. Berreth*, 294 Kan. 98, 273 P.3d 752 (2012); *State v. Speed*, 265 Kan. 26, 40, 961 P.2d 13 (1998) (noting that Speed

9

was in Oklahoma for a specific period); *State v. Lee*, 263 Kan. 97, 105-108, 948 P.2d 641 (1997) (noting Lee was in Missouri and Oklahoma for a specific period), *disapproved of on other grounds by State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006); *State v. Houck*, 240 Kan. 130, 131-32, 136, 727 P.2d 460 (1986) (noting Houck was in Arkansas on parole from Kansas between certain dates); *State v. Martin*, No. 104,756, 2012 WL 924829, at *3-5 (Kan. App. 2012) (unpublished opinion) (noting that Martin was in Missouri for a specific period); *State v. Roberts*, No. 100,788, 2011 WL 767837, at *6 (Kan. App. 2012) (unpublished opinion) (noting that Roberts was in Missouri for a specific period); *State v. Bailey*, No. 101,725, 2009 WL 5062439, at *2 (Kan. App. 2009) (unpublished opinion) (noting that Bailey was in Colorado for a specific period); *State v. Thomas*, No. 93,980, 2006 WL 2439976, at *3-8 (Kan. App. 2006) (unpublished opinion) (noting that the district court calculated a specific number of days Thomas was absent from Kansas).

Clearly, anytime when Cordes was absent from Kansas would toll the statute of limitations. K.S.A. 2003 Supp. 21-3106(9)(a). And evidence was presented that Cordes was absent from the home. However, the evidence does not indicate that Cordes was always absent from Kansas, nor does it indicate specific periods in order to properly calculate the time for tolling purposes. We do know that Cordes was absent from Kansas when the family moved to Oklahoma in 2009. There was substantial competent evidence to support the finding that the State failed to establish with specificity that the statute of limitations was tolled because Cordes was absent from Kansas before the family moved to Oklahoma.

But the move to Oklahoma does toll the statute of limitations. And the date of the move as it relates to the last possible date of the alleged rape makes this a very close call. P.G. testified that the bathtub events occurred on Merchant Street, where she lived in first grade. P.G. was in first grade in 2003 and 2004. Assuming that the bathtub events occurred while P.G. was in the school year, the latest date that the charge could be

10

brought would be five years from the last day of P.G.'s first grade year, or sometime in late May or early June 2009. Cordes was definitively out of Kansas on the last day of P.G.'s sixth grade year, in 2009. Accordingly, the issue of whether the statute of limitations ran on the last of the bathtub events depends on what the last day of school was in 2004 versus the last day of school in 2009. There was no evidence presented regarding the date of the last day of school in either year. Once the issue is timely raised by the defense, which it clearly was here, the burden is on the State to prove that an offense was committed within the statute of limitations. See *Smith*, 232 Kan. at 134. The State failed to do so. Therefore, substantial competent evidence exists to support the district court's finding that the rape charge was time barred. Accordingly, the expansion of the statute of limitations for rape in 2013 occurred after the original statute of limitations had run, so it does not apply here.

Finally, we note that at the time of the bathtub events, the statute of limitations for aggravated indecent liberties with a child was also five years. K.S.A. 2003 Supp. 21-3106(2). Under the same analysis as the rape charge, the jury would not be able to consider the bathtub events as the factual basis for a finding of guilty to aggravated indecent liberties with a child. This will be discussed further as we move on to a discussion of the mistrial related to Cordes' conviction for that charge. The statute of limitations is not an issue when it comes to the bedroom events in light of the tolling of the statute that occurred once the family moved to Oklahoma in 2009.

*The district court judge did not abuse his discretion by granting a motion for new trial on the aggravated indecent liberties charge.*

The State argues that the district court erred in declaring a mistrial because the court's decision was based on an error of law. Alternatively, the State argues that the declaration of a mistrial was an inappropriate postconviction remedy with regards to the aggravated indecent liberties charge.

11

*Standard of Review*

"The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because: . . . (c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution." K.S.A. 22-3423. An appellate court reviews a district court's decision to declare a mistrial for abuse of discretion. *State v. Harris*, 297 Kan. 1076, 1087, 306 P.3d 282 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

But a mistrial generally takes place during the trial and before a verdict. A defendant may file a motion for new trial within 14 days following the verdict. The court may grant the motion if it finds it to be in the interest of justice. K.S.A. 2017 Supp. 22-3501. Our standard of review for a motion for new trial is the same as it is for a mistrial—abuse of discretion. See *State v. Mathis*, 281 Kan. 99, 103-04, 130 P.3d 14 (2006). So it appears that the parties are really using the terms mistrial and order for a new trial interchangeably. Cordes filed a motion for arrest of judgment, motion for acquittal notwithstanding the verdict, and motion to dismiss with prejudice just six days after the verdict. In it he argued that the fact that the charging document and the instructions for the crime of conviction included time frames that were barred by the statute of limitations required dismissal, acquittal, or other relief. This was a motion for new trial.

Our courts have long held that "[in] order to stand, the verdict of the jury must have the independent approval of the trial court, and when the trial court is dissatisfied with and cannot approve the verdict it is not only the court's right but its imperative

12

judicial duty to grant a new trial." *State v. Clark*, 171 Kan. 734, Syl. ¶ 2, 237 P.2d 255 (1951); see *State v. Smith*, 187 Kan. 42, 45-46, 353 P.2d 510 (1960); *State v. Miller*, 154 Kan. 267, 268, 118 P.2d 561 (1941).

*Discussion*

Here, the judge clearly believed prejudicial conduct occurred during trial. First, because the rape charge should not have been allowed to proceed, the jury was presented with evidence of Cordes' prior bad acts, which may not have been admissible under K.S.A. 60-455 had he dismissed those charges at the outset. In addition, it was impossible to know whether the jury found Cordes guilty of aggravated indecent liberties based on one of the bathtub events, which were all barred by the statute of limitations. He noted that he could have prevented this by giving a special jury instruction "to pin down whether or not they thought the act occurred before or after the statute of limitations would have barred it."

The district court judge looked to *State v. Wilson*, No. 91,681, 2005 WL 2076483 (Kan. App. 2005) (unpublished opinion), for guidance. In *Wilson*, the defendant was brought to trial on three counts of aggravated indecent liberties with a child, with each count involving a different child. The statute of limitations was a key issue in the case; at trial evidence from two of the children indicated that the abuse could have occurred outside the statute of limitations. Testimony from the third child, C.S., indicated that all the abuse occurred well within the statute of limitations. The defendant was found guilty on all three counts. On appeal, this court found that the "jury clearly heard evidence that would have put the abuse outside the statute of limitations." 2005 WL 2076483, at *2. This court reversed the convictions for the two children whose testimony indicated the abuse occurred outside the statute of limitations and affirmed the third conviction. 2005 WL 2076483, at *2.

13

In this case, the district judge was troubled that he was unable to state definitively that Cordes' conviction for aggravated indecent liberties was for an event that occurred within the statute of limitations. The district court stated:

> "[W]e don't know exactly what the jury considered, but the jury may have found that those bathtub incidents did not—there was no penetration . . . maybe they found that the bathtub incidents lacked penetration and, therefore, weren't rape but they were the incidents upon which they returned their guilty verdict of agg[ravated] indecent liberties."

The district court went on to say: "I should have instructed differently. I should have given the jury special questions to pin down whether or not they thought the act occurred before or after the statute of limitations would have barred it." Although the jury was given a multiple acts instruction, and we assume the jurors followed the instructions, there is no way of knowing whether the act all jurors agreed upon occurred on a date that was not barred by the statute of limitations.

Testimony at trial provided a large range of dates from which the jury could have conceivably convicted Cordes. Some of those dates are within the statute of limitations while some are without. Further, the jury instructions did not restrict the jury to a time period that was definitively within the statute of limitations. Closing arguments did not sufficiently clarify that the State was not relying on the 2003 and 2004 bathtub events to support the aggravated indecent liberties charge, although the prosecutor did indicate that the bathtub events supported the rape charge. If the State did not intend for the jury to consider those dates to support the aggravated indecent liberties charge, it is curious that it continued to allege them in the charging document itself and in the instructions, failed to clarify its position in closing statements, and failed to amend the charging document to conform to the evidence even when it was clear from the outset that Cordes was raising statute limitations concerns.

14

The State contends in the alternative that ordering a new trial was an inappropriate postconviction remedy, because in *Wilson* this court allowed the conviction for abuse related to C.S. to stand even though there was some evidence that abuse had occurred outside the statute of limitations. But the State misreads *Wilson*. The court allowed the conviction related to the abuse of C.S. to stand because the abuse *particular to C.S.* fell well within the time listed in the information and the statute of limitations, unlike the other two victims. See 2005 WL 2076483, at *2. It also does not appear that the court in *Wilson* was ever asked to consider whether the admission of evidence related to the two subsequently dismissed charges violated Wilson's rights as to the admission of evidence of prior bad acts under K.S.A. 60-455. So contrary to the State's position, we cannot draw any conclusions from *Wilson* regarding that issue. Moreover, because we are affirming the district court on the basis of the statute of limitations concern, we need not address the additional basis cited by the district court of erroneous admission of K.S.A. 60-455 evidence. We note only that since the adoption of K.S.A. 60-455(d) in 2009, the admission of prior acts of sexual misconduct may be considered for their bearing on any matter to which they are "relevant and probative." L. 2009, ch. 103, § 12; see K.S.A. 2017 Supp. 60-455(d). Because the acts all involve the same victim, it seems likely that they would have been admitted regardless of whether the rape charge proceeded.

This court cannot find that the district court abused its discretion in setting aside Cordes' conviction for aggravated indecent liberties and ordering a new trial. Accordingly, we affirm.

Affirmed.